J. A16033/17

2018 PA Super 24

COMMONWEALTH OF PENNSYLVANIA :  IN THE SUPERIOR COURT OF
               :      PENNSYLVANIA
      v.        :
               :
CHRISTOPHER SCOTT PATTERSON, :    No. 1390 WDA 2016
               :
      Appellant  :


Appeal from the Judgment of Sentence, August 12, 2016,
in the Court of Common Pleas of Westmoreland County
Criminal Division at No. CP-65-CR-0002188-2015


BEFORE: STABILE, J., FORD ELLIOTT, P.J.E., AND STRASSBURGER, J.*


OPINION BY FORD ELLIOTT, P.J.E.:     **FILED FEBRUARY 8, 2018**

   Appellant, Christopher Scott Patterson, appeals from the August 12,

2016 judgment of sentence following his conviction of third-degree murder.

After careful review, we affirm.

   The trial court provided the following factual and procedural history:

> The charges in this case arose from the shooting
> death of Kevin Croney, the owner and operator of
> True Image Tattoo, on March 13, 2015, in the
> parking lot of the tattoo shop in New Kensington,
> Westmoreland County. The evidence presented at
> trial established that on March 13, 2015, at
> approximately 3:00 p.m., [appellant] went to the
> True Image Tattoo shop for the purpose of getting a
> laser tattoo removal treatment, as part of a series of
> treatments Mr. Croney had been providing. After
> entering the shop, [appellant] and Mr. Croney went
> upstairs to Mr. Croney's office and when they
> returned back downstairs, they appeared to be

---

* Retired Senior Judge assigned to the Superior Court.

engaged in an argument regarding money. In order to avoid disrupting the customers within the tattoo shop, both Mr. Croney and [appellant] walked through the back office door and out into a parking area situate immediately behind the building.

[Appellant] testified that at this time, Mr. Croney was getting perturbed because he wanted [appellant] to start paying for the laser tattoo removal treatments, and [appellant] was getting perturbed because he did not feel like he owed Mr. Croney any money based upon a prior agreement that they had made. [Appellant] then testified that he informed Mr. Croney that he would go elsewhere to finish his treatment, and he turned to go to his vehicle which was parked nearby in the parking lot approximately six feet away. As [appellant] was walking towards his car, he claims that he was hit in the back of the head by Mr. Croney, and an altercation ensued.

Mark Patrick, an employee of True Image Tattoo, testified that after he overheard Mr. Croney and [appellant] arguing, he went outside to make sure everything was okay. When he walked outside, he observed [appellant] pinning Mr. Croney up against the door and punching him in the face. Mr. Patrick attempted to defuse the situation by shoving [appellant] away from Mr. Croney. At this time, Mr. Patrick testified that the fighting could have stopped right there—it was broken up—Mr. Croney wasn't advancing. However, despite Mr. Patrick's efforts to separate Mr. Croney and [appellant], Mr. Patrick testified that after shoving [appellant] away, [appellant] began running in his direction in yet another attempt to get to Mr. Croney who was standing behind him. Mr. Patrick testified that in that moment he got spun around and looked up just in time to see [appellant] shoot Mr. Croney.

[Appellant] testified that he shot Mr. Croney in self[-]defense after he observed Mr. Croney holding his pistol in his hand. Mr. Patrick testified that at no time did he see Mr. Croney pull out his gun and point

it at [appellant]. During the investigation, a black Glock 9mm pistol, later identified as belonging to Mr. Croney and a Smith and Wesson .38 special revolver belonging to [appellant] were recovered from the scene.

On or about March 16, 2015, [appellant] was arrested and initially charged with Criminal Homicide. After the preliminary hearing, the Criminal Homicide charge was held for court, but was later amended to Murder of the First Degree. The charge of Murder of the Third Degree was also added by Criminal Information. [Appellant] was charged as follows:

1.    Count One:  Murder of the First Degree, in violation of 18 Pa.C.S.A. § 2502(a).

2.    Count Two:  Murder of the Third Degree, in violation of 18 Pa.C.S.A. § 2502(c).

On March 14, 2016, [appellant] proceeded to a jury trial before [the trial court]. During trial, [appellant] was represented by Attorney Patrick Thomassey. During the trial, the Commonwealth requested that the jury be given an opportunity to view the scene of the alleged crime. On the first day of the trial, the jury, counsel for the parties, [appellant], and Sheriff Deputies, drove to the scene of the alleged crime for a view of the scene. To ensure safety of all involved, the security of [appellant] and court personnel, [appellant] was handcuffed and shackled at all times while transported to the view and while on the scene of the view in the presence of the jury.

On March 18, 2016, the jury returned a verdict of guilty of Murder of the Third Degree, and sentencing was deferred pending a Pre-Sentence Investigation. On July 18, 2016, [appellant] was sentenced to sixteen (16) to thirty-two (32) years['] incarceration at the Department of Corrections and ordered to pay restitution in the amount of $14,050.00 to Mr. Croney's family.

On July 26, 2016, Attorney Thomas Will formally entered his appearance on behalf of [appellant]. On the same day, [appellant] timely filed post-sentence motions. A hearing on the post-sentence motions was held on September 1, 2016, at which time, all post-sentence motions were denied. On September 14, 2016, [appellant] filed a timely Notice of Appeal to the Pennsylvania Superior Court. On September 16, 2016, [the trial court] ordered [appellant] to file a Concise Statement of Errors Complained of on Appeal within twenty-one (21) days. On October 5, 2016, [appellant] filed said statement and raised eleven issues.

Trial court opinion, 11/1/16 at 1-4 (citations to record omitted). The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on November 1, 2016.

Appellant raises the following issues for our review:

I. Whether the Trial Court erred and denied [a]ppellant's U.S. Constitutional rights under the Fifth, Sixth, and Fourteenth Amendments when it permitted the jury to view [appellant] shackled and restrained while on view at the scene of the incident?

II. Whether the Trial Court erred when it directly informed the jury that [appellant] was incarcerated and not afforded bail as a result of the incident in question?

III. Whether the Trial Court erred when it permitted the Commonwealth to begin its case at the scene of the incident without any prior testimony or other presented evidence?

IV. Whether the Trial Court erred when it denied [a]ppellant's Motions for Acquittal?

V. Whether the evidence presented was sufficient to convict [appellant] of homicide in the third degree?

VI.    Whether the Commonwealth presented sufficient evidence to prove that [appellant] did not act in self-defense?

VII.   Whether the Trial Court erred when it denied [appellant's] Post Sentence Motion of Acquittal/Arrest of Judgement and Modification to a Conviction of Voluntary Manslaughter?

VIII.  Whether the Trial Court erred when it denied [appellant's] Post Sentence Motion for Modification of Sentence?

IX.    Whether the Trial Court erred when it Denied [appellant's] Post Sentence Motion for New Trial?

X.     Whether the Trial Court Erred when it permitted the Commonwealth to present evidence of telephone recordings within the Westmoreland County Correctional Facility?

XI.    Whether the Trial Court erred when it did not allow the jury to review transcripts of [appellant's] testimony during deliberation?

Appellant's brief at 5.

**I.**

In his first issue for our review, appellant avers that the trial court erred by permitting the jury to view appellant in shackles during the view of the crime scene at the beginning of the trial. Specifically, appellant avers that the trial court failed to consider any alternative measures to restrain and/or "immediately subdue" appellant following an "adverse incident," thus abusing its discretion. (***See id.*** at 31.) We disagree.

It is well settled under common law and the Constitution that, part and parcel of the concept of a

> fair trial, is a defendant's right to be permitted to appear free from shackles or other physical restraint—this right, however, is not absolute. ***Commonwealth v. Jasper***, 610 A.2d 949, 955 (Pa. 1992). Circumstances that have justified the use of restraint include where a defendant disrupts the proceedings, when there is danger of an escape, and where the court believes that an unrestrained defendant may attack others. ***Id.*** Proper security measures are within the sound discretion of the trial court, and, thus, will not be disturbed absent an abuse of that discretion. ***Commonwealth v. Patterson***, 308 A.2d 90 (Pa. 1973).

***In re F.C. III***, 2 A.3d 1201, 1222 (Pa. 2010). Our cases have defined an abuse of discretion as, ". . . not merely an error of judgment but involves misapplication or overriding the law or the exercise of a manifestly unreasonable judgment passed upon partiality, prejudice or ill will." ***Commonwealth v. L.P.***, 137 A.3d 629, 635 (Pa.Super. 2016), quoting ***Commonwealth v. Ruffin***, 10 A.3d 336, 338 (Pa.Super. 2010) (citations omitted).

Appellant cites a litany of cases from the Supreme Court of the United States discussing the appearance of a criminal defendant during trial and the prejudicial effect that a defendant's appearance may have on a jury. ***See Estelle v. Williams***, 425 U.S. 501, 512 (1976) (holding that a defendant cannot be compelled to "stand trial before a jury while dressed in identifiable prison clothes"); ***Illinois v. Allen***, 397 U.S. 337, 344 (1970) (stating that shackling and gagging a defendant is "something of an affront to the [] dignity and decorum of the judicial proceedings," and the use of shackles

could "have a significant effect on the jury's feelings about the defendant");

***Holbrook v. Flynn***, 475 U.S. 560, 571 (1986) (finding that four uniformed and armed police officers sitting in the front row of the gallery directly behind the defendant did not deny the defendant a fair trial); ***Deck v. Missouri***, 544 U.S. 622, 627 (2005) (gathering cases stating that "trial courts may not shackle defendants routinely, but only if there is a particular reason to do so").

These cases miss the mark. While all these cases address the appearance of a criminal defendant in the presence of the jury, they also all address the defendant's appearance within a courtroom setting and do not address the logistical concerns that accompany a view of the crime scene. Whether it is within the sound discretion of the trial court to require a criminal defendant to appear at a view of the crime scene while shackled is an issue of first impression in Pennsylvania.

Several other jurisdictions, however, have addressed the shackling of a criminal defendant during a view of the crime scene. The Supreme Court of California[1] held that the trial court did not abuse its discretion when it ordered the defendants to be shackled during a view of the crime scene because the trial court determined that "the danger of flight or escape was

---

[1] It has been longstanding law in California that a defendant must be permitted to attend a jury view of the crime scene. ***People v. Bush***, 10 P. 169, 175 (Cal. 1886), cited by ***People v. Garcia***, 115 P.3d 1191, 1203 (Cal. 2005).

greater outside the courtroom," even if a defendant did not have a history of violence. *People v. Hardy*, 825 P.2d 781, 837 (Cal. 1992), *cert. denied*, 506 U.S. 987 (1992). *See also People v. Roberts*, 826 P.2d 274, 291-292 (Cal. 1992), *cert. denied*, 506 U.S. 964 (1992), citing *People v. Mallory*, 365 N.W.2d 673, 683 (Mich. 1984) (agreeing with the Supreme Court of Michigan's[2] holding that a court may "exercise discretion to require the restraining of a defendant at a jury view outside the courtroom 'on the basis of . . . other manifest circumstances.'").

In *State v. Hightower*, 661 A.2d 948, 957 (R.I. 1995), the Supreme Court of Rhode Island[3] ordered that if the defendant were to attend a viewing of the crime scene, he would have to be shackled at the discretion of the marshals responsible for security outside the courtroom. The court found that there was no abuse of discretion when the trial judge acted solely on the advice of marshals or deputy sheriffs in order to determine "what is necessary for the security of the participants in a trial whether in a

---

[2] In Michigan, a criminal defendant charged with a felony is required to be "personally present during the trial." Mich. Comp. Laws § 768.3. The Supreme Court of Michigan has long held that a criminal defendant has the right to accompany a jury to a view of the crime scene. *People v. Auerbach*, 141 N.W. 869, 877 (Mich. 1913).

[3] Unlike California and Michigan, Rhode Island does not recognize the right of a criminal defendant to be present for a jury view of the crime scene because the defendant's "participation at the view would be virtually nonexistent," and the view does not constitute a critical stage of the trial. *Hightower*, 661 A.2d at 957, citing *Snyder v. Massachusetts*, 291 U.S. 108 (1934).

courtroom or outside the courtroom." *Id.*, citing **State v. Byrnes**, 433 A.2d 658, 663 (R.I. 1981).

In Pennsylvania, a criminal defendant has a rules-based right to attend a jury view of the crime scene. Pa.R.Crim.P. 643(B). Based on the similarities with the rights afforded to criminal defendants during jury views in California and Michigan, we find that the trial court did not abuse its discretion when it ordered appellant to be shackled during the jury view of the crime scene. We further find that the trial court did not abuse its discretion when it consulted with the Westmoreland County Sheriff's Office regarding logistical concerns surrounding the transportation of appellant to the view. The trial court stated that the shackling of appellant for the view was necessary "not only to ensure the safety of [appellant], the jurors, and anyone else involved who would be present at the scene, but also in light of the fact that there would be testimony offered outside and [appellant] may have had the opportunity to flee if he was not restrained." (Trial court opinion, 11/1/16 at 4.)

The trial court's reasoning is analogous with the rationale applied by the Supreme Courts of California and Michigan. In **Hardy**, the court specifically cited greater danger of escape outside the courtroom when it determined that shackling the defendant for a jury view was not an abuse of discretion by the lower court. **Hardy**, 825 P.2d at 837. Likewise, the **Mallory** court cited escape prevention as one of the only reasons to shackle

a defendant during trial. **Mallory**, 365 N.W.2d at 682, citing **People v. Duplissey**, 155 N.W.2d 850, 851 (Mich. 1968).

Finally, appellant avers that the trial court abused its discretion by failing to "look into more creative solutions" to diminish the risk of potential escape by appellant, while simultaneously protecting appellant's rights. (Appellant's brief at 31-32.) Specifically, appellant cited various methods of alternative restraint used by other jurisdictions throughout the Commonwealth. (**Id.** at 32.) A lack of creativity by the trial court, however, does not an abuse of discretion make. The trial court did not misapply the law, nor did it exercise a manifestly unreasonable judgment when it ordered that appellant be shackled in order to attend the jury view. Accordingly, appellant's first issue is without merit.

## II.

For his second issue, appellant avers that the trial court erred when it provided a curative instruction to the jury pertaining to appellant's incarceration and the necessity of appellant's being restrained at the view of the crime scene. Specifically, appellant states that "a cautionary instruction indicat[ing] that [a]ppellant was incarcerated because of the serious nature of the crimes charged harmed him in the minds of the jury and stripped him of a cloak of innocence." (Appellant's brief at 32.)

> When reviewing jury instructions, we are governed
> by the following standard:

Our standard of review in assessing a trial court's jury instructions is as follows:

> [W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Kerrigan*, 920 A.2d 190, 198 (Pa.Super. 2007) (internal citations, quotation marks, and brackets omitted).

*Commonwealth v. Trippett*, 932 A.2d 188, 200 (Pa.Super. 2007).

We have explained the abuse of discretion standard as follows:

> It is not sufficient to persuade the appellate court that it might have reached a different conclusion[;] it is necessary to show an actual abuse of the discretionary

- 11 -

> power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion [that] overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

> ***Commonwealth v. Bryant***, 67 A.3d 716, 726 (Pa. 2013), quoting ***Commonwealth v. Eichinger***, 915 A.2d 1122, 1140 (Pa. 2007).

***Commonwealth v. Roane***, 142 A.3d 79, 95-96 (Pa.Super. 2016).

In the instant appeal, the trial court provided the jury with the following preliminary curative instruction prior to the view of the crime scene:

> Now I'm going to tell you at this point in time that [appellant] is in custody. He is presently being held in the Westmoreland County Prison. Homicide of the kind that he is charged with is a nonbailable or nonbondable offense in the Commonwealth of Pennsylvania. So there is no way in which he could be out of the custody of the Westmoreland County Prison or while here in court in the custody of the Westmoreland County Sheriff's Department, and he remains in that custody throughout the trial.

> It is necessary that [appellant] be present at all proceedings, including the view of the scene. And during the view of the scene, [appellant] will be in the custody of the Westmoreland County Sheriff's Department. He will also be in what we call restraints. He will have shackles and handcuffs on.

> I'm instructing you at this time that you are not to draw any adverse or negative inference from the fact that [appellant] is in the custody of the Westmoreland County Sheriff, or that he is generally being held in custody awaiting the disposition of these charges. These are not matters for your consideration. They are not to bear upon your decision in any way in this matter. And I'm instructing that you are not to hold it against [appellant] that he will be in the custody of the Sheriff and in shackles and handcuffs, things which are beyond his control. [Appellant] is in custody simply because that is what is required by the laws of the Commonwealth of Pennsylvania, and I'm instructing you that you're to make no adverse inference as a result of that.

Notes of testimony, 3/15/16 at 297-299.

> "The law presumes that the jury will follow the instructions of the court." *Commonwealth v. Spotz*, 896 A.2d 1191, 1224 (Pa. 2006) (citation omitted); *see also Commonwealth v. O'Hannon*, 732 A.2d 1193, 1196 (Pa. 1999) ("Absent evidence to the contrary, the jury is presumed to have followed the trial court's instructions.").

*Commonwealth v. Chmiel*, 30 A.3d 1111, 1185 (Pa. 2011). Upon careful review of the trial court's instructions to the jury pertaining to the use of shackles and handcuffs on appellant during the view of the crime scene, we do not find any evidence that the trial court abused its discretion. Moreover, appellant failed to demonstrate that he was prejudiced by the trial court's jury instructions, nor has he produced any evidence that the jury failed to follow the trial court's instructions. *See Commonwealth v. Cash*, 137 A.3d 1262, 1272 (Pa. 2016), *cert. denied*, 137 S.Ct. 1202 (2017) (stating that a defendant cannot demonstrate prejudice as a jury is presumed to

- 13 -

follow the trial court's instructions); ***Commonwealth v. Stokes***, 839 A.2d 226, 230 (Pa. 2003), citing ***Commonwealth v. Baez***, 720 A.2d 711, 729 (Pa. 1998), ***cert. denied***, 528 U.S. 827 (1999).

Accordingly, appellant's second issue is without merit.

## III.

In his third issue for our review, appellant states that the trial court erred in permitting the view of the crime scene to take place before any prior presentation and admission of evidence.  In presenting his issue, appellant relies solely upon the Supreme Court of Pennsylvania's 1949 decision in ***Commonwealth v. Darcy***, 66 A.2d 663 (Pa. 1949), ***cert. denied***, 338 U.S. 862 (1949).  The ***Darcy*** court, relying upon the Supreme Court of the United States' decision in ***Snyder v. Massachusetts***, 291 U.S. 97 (1934), stated that:

> it was not error to point out any part or parts [of the crime scene.]  The significance of what the jury saw depended entirely on the sworn testimony which they heard in court. For the trial judge to have permitted any testimony to be received, or any discussion to be indulged in, or any argument to be made ***during the view***, would have been improper.

***Darcy***, 66 A.2d at 667 (emphasis in original).

The ***Darcy*** court further stated the following:

> It may be logically argued that viewing the scene of the crime is not a part of the trial. A trial implies a contest of opposing parties in the presence of the judge. There is no contest between the parties when a viewing takes place. The trial judge may or may not be present, as he chooses. Yet there cannot be a

- 14 -

> judicial trial without a trial judge. The attorneys for the respective parties are usually present but they take no active part. Neither can offer or object to, any evidence, or ask any questions. They must remain passive and mute. The prisoner, if present, must do likewise. The situation is analogous to an agreed-to temporary cessation of hostilities between opposing armies on a battlefield. During the cessation the soldiers of the opposing armies make no hostile move. A flag of truce is in the ascendant and is respected. In one sense the period of cessation of conflict may be considered a part of the battle; in another and stricter sense of the word it is not a part of the battle; the battle is temporarily suspended. So in viewing the scene of a crime by the jury the trial is temporarily suspended, for there is no clashing of opposing parties or opposing counsel and no offer of evidence or asking of questions.

*Id.* at 667-668 (footnote omitted).

As referenced above, jury views are governed by Pennsylvania Rule of Criminal Procedure 643, which **requires** the trial judge, the attorney for the Commonwealth, the defendant, and the defendant's counsel to be present for the view. Pa.R.Crim.P. 643(B). The adoption of Rule 643 by our supreme court in 1968 supersedes the analysis of the *Darcy* court. Indeed, the *Darcy* court contemplated a jury view in which there were no requirements for the trial judge or the defendant to be present at the view.

We therefore find that the trial was not suspended during the jury view, as suggested by the *Darcy* court, and accordingly, the trial court did not err by accepting testimony during the view. Appellant's third issue is therefore without merit.

**IV.**

In his brief, appellant states that issues four through six "address the sufficiency of the evidence presented against [appellant.]"  The Pennsylvania Rules of Appellate Procedure require an argument to "be divided into as many parts as there are questions to be argued; . . . followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a).  Any claim for which an appellant fails to include "citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review" is waived.  ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009), ***cert. denied***, 562 U.S. 906 (2010).

Here, appellant does not include any discussion pertaining specifically to his motions for acquittal.  Therefore, appellant's fourth issue is waived.

**V.**

In his fifth issue presented for our review, appellant avers that the Commonwealth failed to present sufficient evidence to warrant a conviction of third-degree murder.  We disagree.

> In reviewing the sufficiency of the evidence, we view all evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the fact finder] to find every element of the crime beyond a reasonable doubt.  This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.  Although a conviction must be based on "more than mere

suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty."

Moreover, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact finder; if the record contains support for the convictions, they may not be disturbed.

***Commonwealth v. Stokes***, 78 A.3d 644, 649 (Pa.Super. 2013) (citations omitted).

Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

***Commonwealth v. Estepp***, 17 A.3d 939, 943-944 (Pa.Super. 2011) (citations omitted).

The credibility and weight of the evidence are both matters that are in the sole purview of the jury. Specifically, when considering whether the evidence was sufficient to prove each element of each charge beyond a reasonable doubt, we cannot assume the task of weighing evidence and making independent conclusions of fact. ***Commonwealth v. Lewis***, 911 A.2d 558, 563 (Pa.Super. 2006) (citations omitted). "Any doubts regarding [an appellant's] guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Id.***

In the instant appeal, after reviewing the evidence presented cast in the light most favorable to the Commonwealth, as verdict winner, we find that the evidence is sufficient to warrant the jury's conviction for third-degree murder.

> Our Crimes Code defines third-degree murder as follows:
>
> > [T]hird-degree murder is a killing done with legal malice but without the specific intent to kill required in first-degree murder. Malice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty. Malice exists where the principal acts in gross deviation from the standard of reasonable care, failing to perceive that such actions might create a substantial and unjustifiable risk of death or serious bodily injury.
>
> ***Commonwealth v. Kellam***, 719 A.2d 792, 797 (Pa.Super. 1998) (citations and quotation marks omitted). Section 2301 of the Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

***Commonwealth v. Kendricks***, 30 A.3d 499, 509 (Pa.Super. 2011), ***appeal denied***, 46 A.3d 716 (Pa. 2012).

We agree with the trial court's determination that, "[t]he evidence at trial demonstrated that [appellant] intentionally pointed a deadly weapon, namely[,] a Smith and Wesson .38 special revolver[,] at Mr. Croney and

fired striking Mr. Croney in the head." (Trial court opinion, 11/1/16 at 8.) We further find that the evidence demonstrating that appellant shot Mr. Croney in the head from a distance of several inches satisfies the malice requirement to warrant a conviction for third-degree murder. (**See** notes of testimony, 3/16/16 at 432.) Accordingly, appellant's fifth issue is without merit.

## VI.

In his sixth issue on appeal, appellant avers that the Commonwealth failed to present sufficient evidence to prove that he did not act in self-defense.

When a defendant claims self-defense, the burden is on the Commonwealth to disprove the defendant's claim beyond a reasonable doubt. **Commonwealth v. Sepulveda**, 55 A.3d 1108, 1124 (Pa. 2012) (citations omitted). In order for a defendant to successfully claim self-defense, he or she must meet the following three elements: (1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that the use of deadly force was necessary to prevent such harm; (2) the defendant did not provoke the incident which resulted in the victim's death; and (3) the defendant did not violate any duty to retreat. **Commonwealth v. Mouzon**, 53 A.3d 738, 740 (Pa. 2012) (citations omitted). As previously noted, the Commonwealth has the burden of disproving self-defense beyond a reasonable doubt and may do so by

disproving any one of the three self-defense elements the defendant must meet. *Id.* at 740-741.

Here, we only need to address the second factor as discussed in *Mouzon*: whether appellant was at fault in provoking the incident that resulted in the victim's death. We find that the Commonwealth has proven beyond a reasonable doubt that appellant was the aggressor in this case, and therefore his self-defense claim must fail. As noted above, Mark Patrick testified that he attempted to separate appellant and Mr. Croney by shoving appellant away from Mr. Croney. (Notes of testimony, 3/16/16 at 429.) Mr. Patrick further testified that after he shoved appellant away from Mr. Croney, the fighting had stopped; however, appellant, after being shoved away, began running toward Mr. Croney, shoving Mr. Patrick aside. (*Id.* at 430, 432.) Mr. Patrick testified that he then saw appellant shoot Mr. Croney at point-blank range. (*Id.* at 432.) Finally, Mr. Patrick also testified that he did not see Mr. Croney aim his weapon at appellant. (*Id.* at 433-434.)

For these reasons, we find that the Commonwealth has met its burden of disproving appellant's self-defense claim beyond a reasonable doubt and that the evidence fully supports the jury's guilty verdict.

## VII.

In his seventh issue on appeal, appellant avers that the evidence presented only warranted a conviction of voluntary manslaughter. Having

already determined that appellant waived his issues pertaining to the sufficiency of the evidence of his third-degree murder conviction, we need not consider appellant's seventh issue, as the issue is moot. **See Commonwealth v. Nava**, 966 A.2d 630, 632-633 (Pa.Super. 2009), quoting **In re T.J.**, 699 A.2d 1311, 1313 (Pa.Super. 1997) ("A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy").

Here, given that the challenge of the sufficiency of the evidence to support appellant's conviction for third-degree murder has been waived, any determination on whether appellant should have been alternatively convicted of voluntary manslaughter cannot have any practical effect.

## VIII.

In his eighth issue for our review, appellant requests that we review his sentence imposed by the trial court.

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Commonwealth v. Moury*, 992 A.2d 162, 169-170 (Pa.Super. 2010) (citation omitted).

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, [752 A.2d 910, 912 (Pa.Super. 2000)]. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (citation omitted).

The record indicates that appellant timely filed a notice of appeal and that the issue was properly preserved in a motion to reconsider and modify sentence.

Appellant failed to include a Rule 2119(f) statement in his brief, and the Commonwealth has likewise failed to object to the lack of a Rule 2119(f)

statement. Since the requirement of such a statement is procedural and not jurisdictional, "the Commonwealth's failure to object to or otherwise assert the defect in the form of Appellant's brief has resulted in a waiver of the defect." ***Commonwealth v. Titus***, 816 A.2d 251, 255 (Pa.Super. 2003) (citations omitted); ***see also Commonwealth v. Brougher***, 978 A.2d 373, 375 (Pa.Super. 2009) (failure of the appellant to comply with Rule 2119(f), where the Commonwealth does not object to statement's absence, does not compel waiver). Therefore, we must determine whether there is a substantial question requiring us to review the discretionary aspects of the sentence imposed by the trial court. Whether an issue raises a substantial question is a determination made on a case-by-case basis. ***Commonwealth v. McAfee***, 849 A.2d 270, 274 (Pa.Super. 2004) (citation omitted).

A substantial question is raised when an appellant "advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa.Super. 2011) (citation omitted).

In the instant appeal, appellant fails to meet either of the requirements for a substantial question. Specifically, appellant fails to articulate how the trial judge's sentence is inconsistent with any aspect of

the Sentencing Code. As we stated in **Commonwealth v. Disalvo**, 70 A.3d 900 (Pa.Super. 2013),

> "this [c]ourt has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." **See also Commonwealth v. Kraft**, 737 A.2d 755, 757 (Pa.Super. 1999), **appeal denied**, 747 A.2d 366 (Pa. 1999) (determining appellant's claim that sentence of incarceration for DUS violation was excessive because sentencing court failed to adequately consider certain mitigating factors did not raise substantial question).

**Id.** at 903, quoting **Commonwealth v. Downing**, 990 A.2d 788, 794 (Pa.Super. 2010) (citations omitted)

Here, appellant avers that the trial court failed to fully consider mitigating factors such as appellant's age, prior record score, lack of violent tendencies prior to the shooting, and appellant's belief that his life was in danger. Moreover, in its Rule 1925(a) opinion, the trial court explicitly stated that it took into account the pre-sentence investigation, as well as appellant's mitigating factors when deciding his sentence. (**See** trial court opinion, 11/1/16 at 10-11.) As our cases clearly indicate, this does not rise to the level of a substantial question, and we thus cannot consider appellant's eighth issue on its merits.

## IX.

In his ninth issue on appeal, appellant avers that the first eight issues raised, when viewed in the aggregate, "create an accumulation of prejudices

that necessitate a new trial." (Appellant's brief at 42.) We have repeatedly held that:

> an appellant cannot bootstrap a series of meritless claims into a cumulative claim of error. *See Commonwealth v. Rolan*, 964 A.2d 398, 411 (Pa.Super. 2008) ("No number of **failed** claims may collectively attain merit if they could not do so individually.") (quoting *Commonwealth v. Williams*, 615 A.2d 716, 722 (Pa. 1992)) (emphasis in original).

*Commonwealth v. Kearney*, 92 A.3d 51, 62 (Pa.Super. 2014), *appeal denied*, 101 A.3d 102 (Pa. 2014). Accordingly, appellant's ninth issue is without merit.

## X.

For his tenth issue raised for our review, appellant avers that the trial court erred by permitting "the use of prison telephone conversations during the cross-examination of [appellant.]" (Appellant's brief at 42.) Additionally, appellant alleges that the trial court erred because it stated that a court order was not necessary to obtain the recordings. This claim is without merit.

We have explained:

> [Our] standard of review for a trial court's evidentiary rulings is narrow. The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise

> of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Mendez***, 74 A.3d 256, 260 (Pa.Super. 2013) (internal quotations and citations omitted). Moreover, "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. ***Commonwealth v. Lopez***, 57 A.3d 74, 81 (Pa.Super. 2012) (internal quotations and citations omitted).

Interpreting the language of Pennsylvania's Wiretap Act is a pure question of law and thus demands a ***de novo*** standard of review. ***Commonwealth v. Deck***, 954 A.2d 603, 606 (Pa.Super. 2008).

As our Supreme Court explained, "Pennsylvania's Wiretap Act is generally modeled after the federal analogue, 18 U.S.C. §§ 2510-2520. The federal legislation authorizes states to adopt coordinate statutes permitting the interception of wire, oral, or electronic communications and to grant greater, but not lesser, protection than that available under federal law." ***Commonwealth v. Spangler***, 570 Pa. 226, 809 A.2d 234, 237 (2002) (internal citations omitted). Further, since Pennsylvania's Wiretap Act "emphasizes the protection of privacy," "the provisions of the Wiretap Act [must be] strictly construed." ***Id.***

Our interpretation of the Wiretap Act necessarily begins with the statutory language.

The Wiretap Act prohibits the intentional interception, disclosure, or use of a "wire, electronic or oral communication." 18 Pa.C.S.A. § 5703. However, the Wiretap Act contains enumerated "exceptions to [the] prohibition of interception and disclosure of communications." In relevant part, 18 Pa.C.S.A. § 5704 declares:

It shall not be unlawful and no prior court approval shall be required under this chapter for:

. . .

(14) An investigative officer, a law enforcement officer or employees of a county correctional facility to intercept, record, monitor or divulge any telephone calls from or to an inmate in a facility under the following conditions:

(i) The county correctional facility shall adhere to the following procedures and restrictions when intercepting, recording, monitoring or divulging any telephone calls from or to an inmate in a county correctional facility as provided for by this paragraph:

(A) Before the implementation of this paragraph, all inmates of the facility shall be notified in writing that, as of the effective date of this paragraph, their telephone conversations may be intercepted, recorded, monitored or divulged.

(B) Unless otherwise provided for in this paragraph, after intercepting or recording a telephone conversation, only the superintendent, warden or a designee of the superintendent or

warden or other chief administrative official or his or her designee, or law enforcement officers shall have access to that recording.

(C) The contents of an intercepted and recorded telephone conversation shall be divulged only as is necessary to safeguard the orderly operation of the facility, in response to a court order or in the prosecution or investigation of any crime.

(ii) So as to safeguard the attorney-client privilege, the county correctional facility shall not intercept, record, monitor or divulge any conversation between an inmate and an attorney.

(iii) Persons who are calling into a facility to speak to an inmate shall be notified that the call may be recorded or monitored.

(iv) The superintendent, warden or a designee of the superintendent or warden or other chief administrative official of the county correctional system shall promulgate guidelines to implement the provisions of this paragraph for county correctional facilities.

18 Pa.C.S.A. § 5704.

*Commonwealth v. Mickel*, 142 A.3d 870, 874 (Pa.Super. 2016).

In his severely limited argument, appellant does not allege **any** violations of the Pennsylvania Wiretap Act. Indeed, appellant does aver that the recordings of his telephone conversations were obtained without a court order. This argument is wholly without merit. A plain reading of the Pennsylvania Wiretap Act explicitly reflects that it shall **not** be unlawful, and **no court order is required** for a county correctional facility to intercept, record, monitor, and/or divulge most inmate telephone conversations for the prosecution of any crime. 18 Pa.C.S.A. § 5704(14)(i)(C). We therefore find that appellant's tenth issue is without merit.

**XI.**

In his final issue for our review, appellant avers that the trial court erred when it did not permit the jury to review transcripts of appellant's testimony during deliberations. As noted by appellant, a jury, "in order to refresh [its] recollection, [may request] a reading of a portion of the testimony actually given at the trial[;] it is [then] a matter within the discretion of the trial court whether to grant such [a] request." *Commonwealth v. Peterman*, 244 A.2d 723, 726 (Pa. 1968); *see also Commonwealth v. Johnson*, 838 A.2d 663, 677 (Pa. 2003), *cert. denied*, 543 U.S. 1008 (2004).

Aside from a bald allegation that the estimated hour that was required to produce a transcript of appellant's testimony, "which in the [trial] court's

eyes was too long in a murder trial deliberation," appellant fails to allege any abuse of discretion on the part of the trial court. (***See*** appellant's brief at 44.) Additionally, the trial court stated it its Rule 1925(a) opinion that it was concerned having a portion of appellant's testimony re-read to the jury would not provide the jury with "the same benefit of observing [appellant] or his demeanor or the manner in which [appellant] testified." (Trial court opinion, 1/1/16 at 13.)

We therefore find that the trial court did not abuse its discretion when it denied the jury's request to review the transcripts of appellant's trial testimony during deliberations. Accordingly, appellant's claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/8/2018