J-S38036-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KEYON EDWARD LUCAS :
:
Appellant : No. 70 WDA 2021

Appeal from the Judgment of Sentence Entered August 28, 2020
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001573-2017

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: APRIL 11, 2022**

Appellant, Keyon Edward Lucas, appeals from the judgment of sentence imposed following his conviction of third-degree murder and related charges. We affirm.

On January 23, 2017, Lavell Beason and four other individuals traveled in a minivan to East 22nd Street between Ash and Wallace Streets in the City of Erie.  Once they arrived at their destination, Beason's mother went inside a building to look at an apartment.  While the minivan was parked on the street, Beason exited and greeted several individuals congregating on a porch of a nearby home.  Appellant was one of the individuals on the porch; however, Beason did not shake hands or speak with him.  Beason then returned to the vehicle and sat in the front passenger seat.  A few moments

_____

[*] Retired Senior Judge assigned to the Superior Court.

later, Appellant approached the van, pulled out a handgun, and fired four times into the van, striking Beason once in the neck and once in the chest. Beason was taken to the hospital, where he was pronounced dead.

Although he was a juvenile at the time of shooting, Appellant was charged as an adult with general criminal homicide[1] and related charges. A jury trial commenced in February 2020, at which the trial court instructed the jury as to first- and third-degree murder. The Commonwealth presented the testimony of William Wall, who was on the porch with Appellant prior to the shooting, as well as two of the individuals who were in the van with Beason. Furthermore, and as relevant here, the Commonwealth's evidence at trial included a black hooded sweatshirt found in Appellant's last known residence that showed evidence of gunshot residue on the right sleeve, surveillance video and video stills showing Wall's movements after the shooting, and a Facebook photograph of Appellant with a gun that was consistent with the weapon used in the shooting.[2]

On February 26, 2020, the jury convicted Appellant of third-degree murder, five counts of aggravated assault, four counts of recklessly endangering another person, possession of a firearm without a license, possession of a firearm by a minor, possession of an instrument of crime,

---

[1] 18 Pa.C.S. § 2501(a).

[2] The actual murder weapon was not recovered by police.

discharge of a firearm into an occupied structure, and flight to avoid apprehension.[3] On August 28, 2020, the trial court imposed an aggregate sentence of 20 to 49 years of incarceration followed by 4 years of probation. Appellant filed a post-sentence motion, which the trial court denied. This timely appeal followed.[4]

Appellant presents the following issues for our review:

1. Did the trial court err as a matter of law and abuse its discretion when it found that the gunshot residue report was admissible?

2. Did the trial court err as a matter of law and abuse its discretion when it found that the still photos from Serafin's Market were admissible?

3. Did the trial court err as a matter of law and abuse its discretion by admit[ting] Facebook photos of the Appellant holding an alleged firearm?

4. Was there insufficient evidence to uphold a conviction for third degree murder?

Appellant's Brief at unnumbered pages 16-17 (unnecessary capitalization and suggested answers omitted).

We apply the following standard in reviewing Appellant's first three issues, which relate to the trial court's evidentiary rulings:

_____

[3] 18 Pa.C.S. §§ 2502(c), 2702(a)(1), (4), 2705, 6106(a)(1), 6110.1(a), 907(a), 2707.1(a), and 5126(a), respectively.

[4] Appellant filed his notice of appeal from the trial court's order denying his post-sentence motion. Appellant's appeal, however, properly lies from the judgment of sentence, which was made final by the denial of his post-sentence motion. *See Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*). The caption has been corrected accordingly.

The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. Our standard of review of a challenge to an evidentiary ruling is therefore limited. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Williams*, 241 A.3d 1094, 1101 (Pa. Super. 2020) (citation omitted). "Evidence is admissible if it is relevant—that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact—and its probative value outweighs the likelihood of unfair prejudice." *Commonwealth v. Clemons*, 200 A.3d 441, 474 (Pa. 2019) (citation omitted). We further note that decisions involving discovery in criminal cases lie within the discretion of the trial court and the court's ruling on discovery issues will not be reversed absent an abuse of that discretion. *Commonwealth v. Renninger*, ___ A.3d ___, 2022 PA Super 2, at *10 (Pa. Super. 2022) (*en banc*).

Appellant first challenges the trial court's admission of the gunshot residue report showing the presence of residue on the sweatshirt believed to have been worn by Appellant on the day of the shooting. The sweatshirt was found by police in Appellant's bedroom in his last-known residence, during a search conducted six days after the shooting. N.T., 2/24/20, at 66-69. The left and right sleeves of the sweatshirt were swabbed, and these two samples were sent to a laboratory for gunshot residue testing. *Id.* at 73-75; N.T., 2/25/20, at 12-15. An expert in gunshot residue analysis and interpretation

testified that Appellant's left sleeve sample showed no evidence of gunshot residue, while his right sleeve tested positive for particles characteristic of gunshot residue. N.T., 2/25/20, at 28-32.

Although the gunshot residue report had been prepared months in advance of trial, the prosecution did not become aware of the report until they met with detectives the day before trial was set to start, after a jury was selected; at that point, the report was turned over to the defense. N.T., 2/18/20, at 9-10. On the first day of trial, the trial court heard oral argument on Appellant's motion *in limine* to exclude the report and took the matter under advisement but directed the Commonwealth not to refer to the gunshot residue in its opening statement. *Id.* at 9-17, 25-26.

On the morning of the second day of trial, the trial court ruled that the gunshot residue report could be admitted but indicated that it was inclined to grant a continuance to allow the defense to investigate the report and sweatshirt. N.T., 2/19/20, at 15, 26. At that time, the court authorized Appellant to hire a private investigator to assist in the investigation. *Id.* at 22, 27, 211. Later during the second day of trial, the trial court concluded that a two-day continuance was the appropriate remedy for the prosecution's violation of its discovery obligation; this would allow the defense two weekdays plus the weekend to investigate. *Id.* at 102-03, 108-11.

When trial resumed after the continuance on Monday, February 24, 2020, Appellant renewed his motion to exclude the gunshot residue report on the basis "that they really can't tie" the sweatshirt to him as his family had

been evicted from the residence approximately six weeks prior to the shooting. N.T., 2/24/20, at 4-5. The Commonwealth represented that testimony from the detective who executed the search warrant would show that the home appeared to be lived in after the eviction. *Id.* at 5-7. The court denied the motion to exclude and determined that the question of whether Appellant was residing in the home at the time of the shooting and left the sweatshirt there would be left to the jury. *Id.* at 8.

Appellant argues that the failure to produce the gunshot residue report until the eve of trial violates *Brady v. Maryland*, 373 U.S. 83 (1963), as well as the Commonwealth's pre-trial discovery obligations under Rule of Criminal Procedure 573. Appellant argues that the two-day continuance ordered by the trial court did not permit sufficient time to hire an expert to review the gunshot residue report or to investigate whether the sweatshirt was used as evidence in a trial in which Appellant's brother was charged in a shooting. Appellant also argues that under *Brady*, the proper remedy was the exclusion of the report as well as any expert testimony derived therefrom.

Preliminarily, we observe that the Commonwealth's failure to produce the gunshot residue report in advance of trial did not violate *Brady* as the report was inculpatory and not favorable to Appellant's defense. *See Commonwealth v. Bagnall*, 235 A.3d 1075, 1086 (Pa. 2020) (*Brady* is implicated only where evidence at issue is favorable to accused, either because it is exculpatory, or it impeaches). Rule 573 provides, in relevant part:

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory*. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

\* \* \*

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

\* \* \*

**(D) Continuing Duty to Disclose.** If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

**(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(B)(1)(e), (D), (E).

The purpose of Rule 573 is to prevent trial by ambush. ***Commonwealth v. Lynch***, 242 A.3d 339, 350 (Pa. Super. 2020). Where a discovery violation occurs, the trial court has broad discretion in choosing the appropriate remedy from those outlined in Rule 573(E). ***Commonwealth v.***

*Brown*, 200 A.3d 986, 993 (Pa. Super. 2018). While the trial court's discretion in this regard is not unfettered, "[i]n most cases, ordering a continuance will be an adequate remedy." *Commonwealth v. W. Smith*, 955 A.2d 391, 395 (Pa. Super. 2008) (*en banc*). "A continuance is appropriate where the undisclosed statement or other evidence is admissible and the defendant's only prejudice is surprise." *Id.* We further note that:

> A defendant seeking relief from a discovery violation must demonstrate prejudice. A violation of discovery does not automatically entitle appellant to a new trial. Rather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure.

*Brown*, 200 A.3d at 993 (citations and quotation marks omitted).

Upon review, we do not discern an abuse of discretion in the trial court's grant of a continuance of two weekdays, as well as the weekend, to respond to the gunshot residue report. First, we note that while the trial court concluded that the Commonwealth did not willfully withhold the gunshot residue report, it did find that a violation of Rule 573 occurred and granted the remedy of a continuance, which is expressly authorized under part (E) of the rule. While defense counsel at one point requested a two-week continuance if the report were admitted, she also indicated that she "would probably need a few days" to investigate and at the time of the court's ruling stated that a continuance of two days would be sufficient. N.T., 2/18/20, at 100; N.T., 2/19/20, at 16, 103-04. Furthermore, the trial court authorized

- 8 -

Appellant to enlist a private investigator to assist in preparing to address the admittance of the gunshot residue report. N.T., 2/19/20, at 22, 27, 211.

Moreover, while Appellant now argues that the trial court did not permit enough time to hire an expert to review the Commonwealth's expert's report, Appellant did not seek time or funds to hire his own expert when this matter was discussed at trial. Instead, Appellant's concern initially focused on whether the sweatshirt related to his brother's trial, which appeared to be resolved when the Commonwealth represented that a video that captured the shooting his brother was involved in showed him wearing a long-sleeve shirt, not a sweatshirt. N.T., 2/19/20, at 17-20. Following the continuance, Appellant objected to the admission of the gunshot residue report on the grounds that the sweatshirt could not be connected to him based upon the earlier order of eviction from the premises, an issue that the trial court concluded should be left for the consideration of the jury. N.T., 2/24/20, at 4-8. Ultimately, Appellant has not demonstrated how the earlier receipt of the gunshot residue report would have affected his trial court strategy or how he was prejudiced by the fact that the court did not grant a longer continuance. ***Brown***, 200 A.3d at 993. Therefore, we find no cause to disturb the court's determination with respect to this issue.

Appellant next argues that still images captured from a surveillance video at Serafin's Market, which showed William Wall standing outside of a store a few blooks from the site of the shooting, should not have been admitted as the original video had been lost at the time of trial. Appellant

contends that the timestamps on the still images were unreliable as they could not be verified as accurate in the absence of the video itself. Appellant further argues that the stills were not admissible pursuant to the best-evidence rule as the original video should have been produced to prove its contents.

The still images from the Serafin's Market camera were admitted at trial along with video recordings from several other cameras along Ash Street that showed the path that Wall traveled in the aftermath of the shooting as well as to capture the minivan driving towards the hospital. N.T., 2/24/20, at 37-43, 98-110; Commonwealth Exhibits N-1 to N-6. Upon the admission of the still images from Serafin's Market, Detective Christopher Janus of the Erie Police Department testified that this video appeared to have been inadvertently deleted in the three years between the shooting and trial, although officers had taken screenshots of the video when they originally reviewed it, which were the images shown at trial. N.T., 2/24/20, at 108-09. The videos and still images were utilized in part to corroborate Wall's testimony that he walked away from the scene just before the shooting occurred, as well as to undermine the defense theory that Wall was the actual shooter based upon initial statements to police by members of Beason's family blaming Wall for Beason's death.

Prior to trial, the trial court heard oral argument on Appellant's motion *in limine* to the admission of the Serafin's Market still images. N.T., 2/18/20, at 3-8. Appellant's counsel explained her objection to the images as follows:

> [A]ll [the Commonwealth has] are the stills, which I received late last week. The video itself no longer exists. I haven't seen it. Apparently [the Erie Police Department] lost it. I think under the Best Evidence Rule[,] under the Doctrine of spoilage, the timestamps from that should be excluded, because we have no way of knowing if they're accurate. We can't compare it against any other video. [] I'm not able to see the entire video, and so **I think that while they could get the photograph in, it would have to be without the timestamp**.

*Id.* at 3-4 (emphasis added). The Commonwealth agreed that there was no way to corroborate the timestamps, and the trial court granted Appellant's motion, ruling that the images could only be admitted with the timestamps removed. *Id.* at 5-8. Appellant did not object at the time when the still images—without the timestamps—were admitted and published to the jury without the timestamps. N.T., 2/24/20, at 107; Commonwealth Exhibits N-1 to N-6.

As Appellant objected only to the timestamps on the still images taken from Serafin's Market surveillance video, we find no abuse of discretion in the trial court's admission of the images without the timestamps.[5] While Appellant now argues that the images themselves were improperly admitted, that issue was not preserved below and cannot be raised on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised

---

[5] Appellant objected at trial to police testimony relating to the timestamps that appeared on video captured by surveillance cameras outside two other establishments along Ash Street, which the trial court overruled as efforts were taken to verify the accuracy of the timestamps. N.T., 2/24/20, at 40-41, 177. The admission of testimony related to the timestamps from these other videos has not been raised on appeal.

- 11 -

for the first time on appeal."). Therefore, we find no merit to Appellant's second appellate issue.

Appellant next argues that the trial court abused its discretion by permitting the Commonwealth to introduce a photo posted to Facebook in March 2016, which showed Appellant holding what appeared to be a firearm. Appellant asserts that, because he was in juvenile placement at the time of the Facebook post, the photograph likely was taken at least two years prior to the shooting. In light of the "extreme time difference" and the lack of conclusive proof that Appellant was holding an actual firearm rather than a replica, Appellant argues that the prejudice of the photograph outweighed its probative value. Appellant's Brief at unnumbered page 29. Appellant further contends that the photograph was "an attempt to sneak in evidence of [his] propensity for violence" without providing proper notice under Pennsylvania Rule of Evidence 404(b). *Id.* at 31.

Prior to trial, the trial court entered an order permitting Appellant to introduce the March 2016 Facebook photograph of Appellant holding a firearm. Order, 2/18/20. Appellant moved for reconsideration, and the trial court granted the motion and excluded the March 2016 photograph based upon the remoteness in time from the incident. N.T., 2/18/20, at 22-24. The court, however, indicated that it would permit the Commonwealth to introduce a Facebook photograph from December 15, 2016 showing Appellant holding a firearm, but the court required that the photo come in with testimony from the Commonwealth's firearms expert that the gun in the photo was consistent

with the murder weapon and further required the Commonwealth to edit out a shotgun that was also visible in the image. *Id.* at 97-99; N.T., 2/19/20, at 5-6, 10, 14-15, 197. The trial court found that the probative value of the December 2016 photograph outweighed its prejudicial value and that any doubts as to whether it was the actual murder weapon or whether it was even an operational firearm would go to the weight of the evidence and be fodder for cross-examination. N.T., 2/19/20, at 5-6, 10, 197.

The December 2016 photograph was admitted during the testimony of the Commonwealth's firearms expert, Corporal Dale Wimer of the Pennsylvania State Police, who testified that the bullets used in the shooting were .40 caliber and narrowed the potential weapons down to two models of Charter Arms revolvers or four models of Smith and Wesson semi-automatic pistols. *Id.* at 176, 182, 185. Corporal Wimer reviewed the Facebook photograph and determined that it appeared to be a semi-automatic pistol of either .40 or .45 caliber and that it was consistent with a Smith and Wesson model that could have produced the bullets and bullet casings recovered by police in this case. *Id.* at 198-99; Commonwealth Exhibit A-H. On cross-examination, Corporal Wimer conceded that he could not definitively rule out that the gun visible in the photograph was in fact a toy or replica. N.T., 2/19/20, at 203-04.

As Appellant's appellate argument focuses on the March 2016 photograph rather than the December 2016 photograph, and the trial court agreed with his objection that the photo was too remote from the shooting

and ruled it inadmissible, Appellant is not entitled to relief on his third issue. Furthermore, to the extent we address the question of whether the trial court abused its discretion in allowing the December 2016 Facebook photograph to be admitted, we would not overturn the trial court's ruling.[6]  As the trial court explained, the December 2016 photograph had clear probative value as the Commonwealth's firearms expert was prepared to testify that it was consistent with the limited number of firearm models that could have been the murder weapon, the photo was from less than six weeks prior to the shooting, and there was no dispute that Appellant was the individual depicted in the photograph holding the purported firearm.  N.T., 2/19/20, at 6.

While the photograph was certainly harmful to Appellant's case, it was not so unfairly prejudicial that exclusion was required as the trial court required that the shotgun, which was extraneous to trial, be cropped out and the photo was admitted solely to show Appellant's access to a firearm consistent with the murder weapon at the time of the shooting.  **See Commonwealth v. Gad**, 190 A.3d 600, 605 (Pa. Super. 2018) ("Evidence will not be prohibited merely because it is harmful to the defendant. [E]xclusion is limited to evidence so prejudicial that it would inflame the jury

_____

[6] While Appellant argues on appeal that the March 2016 photograph was not admitted in accordance with Rule of Evidence 404(b), we note that the December 2016 photograph was not admitted pursuant to Rule 404(b), and he did not object to its admission based on Rule 404(b).  Therefore, we confine our discussion to the issue addressed at trial of whether the probative value of the December 2016 photograph was outweighed by the potential for unfair prejudice.  **See** Pa.R.E. 403.

to make a decision based on something other than the legal propositions relevant to the case.") (citation omitted). Furthermore, to the extent that Corporal Wimer did not conclusively opine as to the weapon's exact model or caliber or that it was in fact a functional firearm, this was fully explored in his testimony and put to the jury for their resolution. Therefore, we would find no abuse of discretion in the admission of the December 2016 photograph.

In his last issue, Appellant argues that there was insufficient evidence to support his third-degree murder conviction. Appellant argues that the evidence does not show that Appellant committed the offense as some eyewitnesses to the crime initially told police that William Wall was the shooter and only later identified Appellant. In addition, Appellant argues that the Commonwealth's "entire presentation of evidence was based on [] the theory that the killing was premeditated and that Appellant had the specific intent to kill" Beason—in other words, the required showing for a first-degree murder conviction—and that the evidence did not satisfy the lesser standard for a third-degree murder conviction. Appellant's Brief at unnumbered pages 32-33.

A challenge to the sufficiency of the evidence presents a question of law and is subject to plenary review under a *de novo* standard. ***Commonwealth v. B. Smith***, 234 A.3d 576, 581 (Pa. 2020). When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, were sufficient to prove every element of the

offense beyond a reasonable doubt. *Id.* "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Bowens*, 265 A.3d 730, 740 (Pa. Super. 2021) (*en banc*) (citation omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* (citation omitted). Finally, we note that the trier of fact has the authority to determine the weight of the evidence and credibility of the witnesses and is free to believe all, part, or none of the evidence. *Id.* at 741.

To sustain a conviction of third-degree murder, the Commonwealth must prove that the defendant killed another with malice. *Commonwealth v. Knox*, 219 A.3d 186, 195 (Pa. Super. 2019); *Commonwealth v. Patterson*, 180 A.3d 1217, 1230 (Pa. Super. 2018).

> Malice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty. Malice exists where the principal acts in gross deviation from the standard of reasonable care, failing to perceive that such actions might create a substantial and unjustifiable risk of death or serious bodily injury.

*Patterson*, 180 A.3d at 1230 (citation omitted). The factfinder may infer malice where the defendant uses a deadly weapon upon a vital part of the victim's body. *Knox*, 219 A.3d at 195-96 (shooting victim in chest established malice); *see also Patterson*, 180 A.3d at 1230 (firing revolver at victim's head showed defendant acted with malice); *Commonwealth v. Devine*, 26

A.3d 1139, 1150 (Pa. Super. 2011) (willful discharge of a firearm in direction of a group of people showed that defendant acted with malice).

Viewing the evidence in the light most favorable to the Commonwealth, we conclude that the evidence was sufficient to support Appellant's third-degree murder conviction. First, we note that the testimony of the forensic pathologist established that Beason died as a result of the gunshot wound to his chest. N.T., 2/19/20, at 51, 55-56. Furthermore, in addition to the gunshot residue report and the video and photographic evidence described above, eyewitness evidence established that Appellant was the individual who shot Beason. Wall testified that he was on the porch with various individuals, including Appellant, when Beason approached. N.T., 2/18/20, at 127-32. Beason greeted him and shook hands with various of the others present, although not with Appellant. *Id.* at 139-41. As Beason walked back towards the vehicle, Wall saw Appellant, who was wearing a black hooded sweatshirt, fidgeting with a silver firearm with an extended magazine, pulling his hood down over his head, and then disappearing briefly between two houses. *Id.* at 132-33, 145-48, 150-53, 175. Sensing something was afoot, Wall and others walked away from the porch, and Wall did not turn around when he heard gunshots a few seconds later. *Id.* at 148-49, 154-55. Wall was arrested on unrelated charges a few days later, and he identified Appellant as being present at the scene, picked him out of a lineup, and described his firearm to detectives. *Id.* at 173-78.

Markeara Ott, Beason's girlfriend who was in the van at the time of the shooting, testified that she recognized three of the individuals on the porch, including Appellant who was dressed in dark clothing on that day; although Ott did not observe the shooting itself, she picked Appellant out of a photographic lineup as being present at the scene. N.T., 2/18/20, at 54, 59-60, 76, 81-83, 116; N.T., 2/24/20, at 84-87. Latasha Myers, Beason's aunt who was also present in the minivan, stated that as Beason was returning to the vehicle, she saw various individuals disperse from the porch, including Appellant who walked towards the minivan. N.T., 2/19/20, at 62-63, 82-84. Myers testified that Appellant, who was wearing a dark hooded sweatshirt, looked directly at her as he was approaching the minivan. *Id.* at 78, 84, 94. Appellant, who was holding the firearm in his right hand, then fired approximately five shots in the direction of the minivan. *Id.* at 86-89. Myers later informed police that she had identified Appellant as the individual who shot her nephew after looking through Facebook photos. *Id.* at 114-17; N.T., 2/24/20, at 120-21.

Therefore, the evidence established that Appellant committed third-degree murder by firing a handgun twice at Beason, striking him once in the neck and once in the chest which caused Beason's death. *Knox*, 219 A.3d at 195-96; *Patterson*, 180 A.3d at 1230. While Appellant claims that the eyewitness testimony was undermined by the fact that some of Beason's family members initially identified Wall as the shooter, we cannot assume the task of weighing the evidence and making independent conclusions of fact as

part of our review of a sufficiency of the evidence claim. **Bowens**, 265 A.3d at 741; **Patterson**, 180 A.3d at 1230.

Furthermore, we find no merit to Appellant's argument that the evidence submitted by the Commonwealth to show that Appellant had a specific intent to kill Beason and therefore committed first-degree murder negated any finding that he committed third-degree murder. Our Supreme Court has previously explained that first-degree and third-degree murder are not mutually exclusive offenses:

> [T]hird degree murder is not a homicide that the Commonwealth must prove was committed with malice and without a specific intent to kill. Instead, it is a homicide that the Commonwealth must prove was committed with malice, but one with respect to which the Commonwealth need not prove, nor even address, the presence or absence of a specific intent to kill. Indeed, to convict a defendant for third degree murder, the jury need not consider whether the defendant had a specific intent to kill, nor make any finding with respect thereto.
>
> . . . [T]he intent to kill is a defined element of first degree murder—this does not mean an element of third degree murder is the polar opposite of intent to kill, such that the Commonwealth must prove a lack of intent to kill to convict of third degree murder. The Commonwealth has no such obligation; evidence of intent to kill is simply irrelevant to third degree murder.

**Commonwealth v. Fisher**, 80 A.3d 1186, 1191 (Pa. 2013) (citation omitted). Therefore, the Commonwealth was not required to prove that Appellant lacked a specific into to kill in order to meet its third-degree murder burden of showing that he acted with malice in causing the death of Beason.

Accordingly, as we have determined that the evidence was sufficient to show that he committed third-degree murder and we find that Appellant is not entitled to relief on his evidentiary issues, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/11/2022