J-A13003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL MOLINA | : | |
| | : | |
| Appellant | : | No. 763 WDA 2016 |

Appeal from the Judgment of Sentence January 26, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0007403-2004,
CP-02-CR-0007611-2004

BEFORE:  OLSON, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 4, 2018**

Appellant, Michael Molina, appeals from the judgment of sentence entered on January 26, 2016, as made final by the denial of his post-sentence motion on April 26, 2016.  We affirm in part, vacate in part, and remand for resentencing.

In mid-2003, Appellant picked up Pamela Deloe ("Deloe") while she was walking on the streets of Pittsburgh.  Deloe began dealing drugs for Appellant and lived with him and several other females.  On September 7, 2003, Melissa Snodgrass ("Victim") told her friend that she would go shopping after completing a drug transaction with Michael Benintend.  That same morning, Appellant took Deloe to a residence where she witnessed him beat, and presumably murder, Victim.  Victim was later reported missing.  Police received information that Victim was being held against her will at Appellant's

residence. When police arrived at the residence they were informed Appellant was not present. On March 9, 2004, Victim's decomposing body was found beneath a pile of debris in the basement of the house where Deloe witnessed Appellant beat Victim.

The Commonwealth charged Appellant via two criminal informations with homicide,[1] conspiracy to commit homicide,[2] and unlawful restraint.[3] Appellant proceeded to trial in December 2006. During that trial, the assistant district attorney ("ADA") impermissibly referenced Appellant's pre-arrest silence. Appellant was convicted of third-degree murder[4] and unlawful restraint and acquitted of conspiracy to commit homicide. The trial court sentenced him to an aggregate term of 20 to 40 years' imprisonment. On appeal, this Court vacated the judgment of sentence because of the ADA's improper remarks and our Supreme Court affirmed. ***Commonwealth v. Molina***, 33 A.3d 51 (Pa. Super. 2011) (*en banc*), *aff'd*, 104 A.3d 430 (Pa. 2014).

Appellant proceeded to a second trial in March and April 2015. The jury was unable to reach a unanimous verdict and the trial court declared a

---

[1] 18 Pa.C.S.A. § 2501.

[2] 18 Pa.C.S.A. § 903, 2501.

[3] 18 Pa.C.S.A. § 2902.

[4] 18 Pa.C.S.A. § 2502(c).

mistrial. Appellant proceeded to a third jury trial in October 2015. Prior to Deloe's testimony, Appellant moved to exclude evidence that Appellant previously assaulted Deloe. The trial court ruled that the evidence was admissible for the limited purpose of explaining why Deloe delayed reporting the incident between Victim and Appellant to police.[5] Appellant was convicted of unlawful restraint and third-degree murder. On January 26, 2016, the trial court sentenced Appellant to an aggregate term of 22½ to 45 years' imprisonment. On April 26, 2016, the trial court denied Appellant's timely post-sentence motion. This timely appeal followed.[6]

Appellant presents four issues for our review:

1. Whether the trial court abused its discretion by allowing the Commonwealth to present extensive evidence [] concerning alleged [prior bad acts] by Appellant[?]

2. Whether the trial court abused its discretion in failing to grant a mistrial when [the ADA] presented improper argument concerning prior [bad acts]?

3. Whether the trial court abused its discretion and/or erred in refusing to grant [Appellant's] request that [the ADA's] second

---

[5] Specifically, the Commonwealth sought to introduce evidence of Deloe's prior beatings at the hands of Appellant to establish that Deloe feared for her safety should she report to the police that she saw Appellant harm Victim. Hence, the Commonwealth argued that Deloe's delay in reporting to the police what she saw and heard on the day in question had a reasonable explanation.

[6] On July 14, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b). On January 18, 2017, after several extensions, Appellant filed his concise statement. On August 28, 2017, the trial court issued its Rule 1925(a) opinion. Appellant included all of his appellate issues in his concise statement.

closing argument be disregarded and/or [to declare] a mistrial when [the ADA] presented improper and misleading argument concerning causation?

4. Whether the trial court imposed an illegal sentence [by sentencing Appellant to a longer period of incarceration after his third trial than it did after Appellant's first trial]?

Appellant's Brief at 7.

In his first issue, Appellant argues that the trial court erred in denying his motion to exclude Deloe's testimony that she was beaten by Appellant. We review a trial court's evidentiary rulings for an abuse of discretion. ***Commonwealth v. Manivannan***, 186 A.3d 472, 479 (Pa. Super. 2018) (citation omitted).

Appellant contends that the evidence of the prior beatings was inadmissible under Pennsylvania Rule of Evidence 404(b).[7] That rule provides that, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.Evid. 404(b)(1). Such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible

_____

[7] Appellant also argues that the evidence was inadmissible under Pennsylvania Rules of Evidence 401 and 403. An analysis under Rule 404(b), however, subsumes analysis under Rule 401. Moreover, the type of Rule 403 objection Appellant raised, unfair prejudice, is also included in a Rule 404(b) analysis. Hence, we focus our attention on Rule 404(b).

only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.Evid. 404(b)(2).

In this case, the evidence of Deloe's prior beatings constituted prior bad acts evidence. Hence, in order to be admissible (1) the evidence must have been offered for a permissible purpose and (2) the probative value of the evidence must have outweighed the risk of unfair prejudice. We conclude that the trial court did not abuse its discretion in finding that evidence of Deloe's beatings satisfied both requirements of Rule 404(b).

First, the trial court admitted the evidence for a limited purpose, *i.e.*, explaining why Deloe delayed reporting what she witnessed and heard the morning of Victim's murder. Both this Court and our Supreme Court have held that evidence explaining a delayed report to police is a proper purpose for the admission of prior bad acts evidence. *See Commonwealth v. Gonzalez*, 112 A.3d 1232, 1237 (Pa. Super. 2015); *Commonwealth v. Weiss*, 81 A.3d 767, 799 (Pa. 2013). Thus, the trial court correctly found a proper purpose for admitting evidence of Deloe's prior beatings at the hands of Appellant.

Turning to whether the probative value of the evidence outweighed its risk for unfair prejudice, we note initially that the probative value of the evidence regarding Deloe's beatings was extremely high. The failure of a witness or victim to file a prompt report to police has a substantial impact on the credibility of that witness or victim when he or she testifies at trial. *See,*

*e.g., Commonwealth v. Mendez*, 74 A.3d 256, 263 (Pa. Super. 2013), *appeal denied*, 87 A.3d 319 (Pa. 2014); *Commonwealth v. Dillon*, 925 A.2d 131, 137–141 (Pa. 2007); *Commonwealth v. Lane*, 555 A.2d 1246, 1250 (Pa. 1989). Here, an adult female delayed reporting what she heard and saw happen to Victim. Most jurors would question why she did not immediately go to police with this information. Therefore, the testimony regarding Deloe's fear of Appellant was critical to the Commonwealth's case-in-chief. Deloe was the Commonwealth's key witness as she explained the events that occurred on the morning of the murder. If the jury learned of Appellant's prior beatings of Deloe, that could explain why she delayed in talking to the police and, it could aid in boosting her credibility regarding her account of Appellant beating Victim the morning of the murder. If, on the other hand, the jury did not learn why Deloe took so long to speak with the police, it may have resulted in the jury discrediting her version of events on the morning in question. Hence, the probative value of the evidence that Appellant previously assaulted Deloe was significant.

We also recognize that the risk of unfair prejudice was high. The evidence that Appellant, on dozens of occasions, beat Deloe could inflame the jury's passions. The trial court took precautions to prevent this from happening. It instructed the jury that the evidence regarding Deloe's beatings could not be used for an improper purpose, *i.e.*, finding that Appellant beat Victim to death because he previously assaulted Deloe. *See* N.T., 10/23/15,

- 6 -

at 811. It is well-settled that jurors are presumed to follow the trial court's instructions. **Commonwealth v. Patterson**, 180 A.3d 1217, 1228 (Pa. Super. 2018) (citation omitted). Hence, although the risk of unfair prejudice was high, it was not as high as the probative value of the evidence.

Our conclusion that the evidence was admissible under Rule 404(b) is supported by Pennsylvania case law. In admitting the evidence, the trial court relied on **Commonwealth v. Osborn**, 528 A.2d 623 (Pa. Super. 1987). In **Osborn**, the defendant argued that "statements [he made] to the rape victim after the rape was completed concerning specific acts of violence committed by [him] in the past, and other violent acts which he intended to commit in the future" were inadmissible. **Id.** at 628 (footnote omitted). This Court rejected that argument and held that the testimony was admissible to explain the delay in reporting the rape to police. **See id.** Deloe's prior beatings was admitted for the same purpose. In this case, Appellant informed Deloe of his prior assault of Victim and she was also acutely aware of the assaults committed against her. Appellant then told Deloe he would go as far with her as he had gone with Victim, *i.e.*, murdering Deloe. As in **Osborn**, Deloe delayed reporting what she saw and heard the morning in question because of her fear of Appellant. Appellant argues that **Osborn** is distinguishable from this case and that the trial court's reliance on **Osborn** was misplaced. Although the facts in **Osborn** and the case at bar are not identical, we agree

with the trial court's conclusion that **Osborn** supports the conclusion that the evidence of Deloe's prior beatings was admissible under Rule 404(b).

Other cases also support the admission of evidence regarding Appellant's beatings of Deloe. In **Gonzalez**, the defendant argued that the trial court erred by admitting evidence that he previously beat his wife, the mother of the victim. **Gonzalez**, 112 A.3d at 1237. This Court rejected that argument and affirmed the trial court's admission of the evidence as a means to explain the delay in reporting a crime to police. **See id.** at 1238. In reaching that decision, this Court emphasized that the trial court instructed the jury on the proper bounds of the use of that evidence. **See id.**

The same situation is present in the case at bar. The evidence of Deloe's beatings was admitted to explain her delay in reporting the murder to police. Moreover, as in **Gonzalez**, the trial court properly instructed the jury regarding the limited admissibility of the evidence. In addition to these similarities, in both **Gonzalez** and this case, the prior bad acts were not committed against the victim. Instead, they were committed against third-parties. Hence, **Gonzalez** is the closest case to the situation present in the case *sub judice*.

The three cases Appellant relies on are all distinguishable from the case at bar. In **Commonwealth v. Roman**, 351 A.2d 214 (Pa. 1976), the prior bad acts evidence was not offered to explain a delay in reporting criminal activity to police. Instead, the prosecution offered the prior bad acts evidence

in order to show the defendant's motive. ***See id.*** at 218-219. The use of prior bad acts evidence to show motive came perilously close to proof of character and ensuing action in conformity with that trait. Thus, our Supreme Court held that the probative value of the evidence was low and the risk of unfair prejudice was high. ***See id.*** at 221. Hence, it concluded that the trial court erred in admitting the evidence. ***See id.***

In ***Commonwealth v. Stanley***, 398 A.2d 631 (Pa. 1979), the prosecution offered prior bad acts evidence "to prove a generally murderous state of mind . . . and a 'scheme' to shoot anyone who was in some way threatening or disturbing." ***Id.*** at 634. Our Supreme Court held that the probative value of such evidence was extremely low and the risk of unfair prejudice was high. ***See id.*** Hence, it held that the evidence was inadmissible. ***See id.*** Again, in this case the evidence was not offered to show a generally assaultive state of mind or a scheme to beat all women. Instead, the evidence was admitted for the limited purpose of explaining Deloe's delay in reporting what she saw and heard to police. Moreover, as we have detailed above, the probative value of this evidence was extremely high.

In ***Commonwealth v. Seiders***, 614 A.2d 689 (Pa. 1992), the prosecution offered prior bad acts evidence to prove intent and motive. Our Supreme Court held that the probative value of the prior bad acts evidence with respect to the defendant's intent was zero because intent was not an element of the charged offense. ***Id.*** at 691. Similarly, our Supreme Court

found that the probative value of the prior bad acts evidence with respect to motive was extremely low. *Id.* 692. Hence, in **Seiders**, unlike the present case, the weight of the relevant considerations militated against admission of the prior bad acts evidence.

We have detailed above why the prior bad acts evidence in this case was highly probative and why its probative value outweighed the risk of unfair prejudice. Prior case law supports the trial court's conclusion that the evidence of Appellant beating Deloe was admissible under Rule 404(b). Accordingly, we conclude that the trial court did not abuse its discretion in permitting the Commonwealth to introduce this prior bad acts evidence.

In his second issue, Appellant argues that the trial court erred in denying his motion for a mistrial after the ADA's closing argument. The Commonwealth contends that this argument is waived because Appellant's counsel respectfully objected at the conclusion of the ADA's closing argument instead of rudely interjecting a challenge during the ADA's presentation. It is well-settled that:

> A party may (**and should**) wait to the end of [a] . . . closing argument to object to [] arguments made therein as long as there is no factual dispute regarding the content of the [] argument and the objection is made immediately after the . . . closing argument with sufficient specificity to permit the trial court to give a limiting or curative instruction.

**Commonwealth v. Hutchison**, 164 A.3d 494, 500 n.7 (Pa. Super. 2017), *appeal denied*, 176 A.3d 231 (Pa. 2017) (emphasis added; citation omitted). In this case, there was no factual dispute regarding the content of the ADA's

closing argument.  Moreover, counsel's objection was made with sufficient specificity so that the trial court could give a limiting instruction.  Hence, Appellant did not waive his challenge by objecting at the end of the ADA's closing argument.

Having rejected the Commonwealth's waiver argument, we turn to the merits of this issue.  "We review a trial court's denial of a mistrial motion for abuse of discretion."  *Commonwealth v. Miller*, 172 A.3d 632, 643 (Pa. Super. 2017), *appeal denied*, 183 A.3d 970 (Pa. 2018) (citation omitted).  "The remedy of a mistrial is an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal."  *Commonwealth v. Cornelius*, 180 A.3d 1256, 1261 (Pa. Super. 2018) (citation omitted).

> With specific reference to a claim of prosecutorial misconduct in a closing argument, it is well settled that in reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made.  Our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial.

*Commonwealth v. Rayner*, 153 A.3d 1049, 1058 (Pa. Super. 2016), *appeal denied*, 169 A.3d 1046 (Pa. 2017) (cleaned up).

During his closing argument, the ADA stated:

> We've heard something about the nature of [Appellant] and what his practices are and what his occupation was at the time.  He kept drug addicted women in his house.  He had them make his drug runs for him.  If they get out of line, he'd beat the crap out of [them].  That's basically his [*modus operandi*].  He's got a lot

- 11 -

of power over women, and he gets rich from doing it, or makes at least enough to keep himself in a purple Intrepid and some sort of van that he drives around. Okay. That's what he is into.

And when a woman owes him -- I don't know the exact amount of money that was said in this trial. I think the figure of $200[.00] or something like that may have been mentioned, would that be a motive to want to beat this woman? What drug dealer is going to want it out on the street that you can beat him, that is, you could take his drugs not pay him for them and get away with it. No. He's going to want people to know the person who tried to beat him and others that might hear about it that he is going to collect his debts, whether it's through blood or violence or even killing to maintain his place in the drug dealing segment of the North Side of Pittsburgh. Does that make sense to you?

* * *

Let's talk about [] Deloe, if we could. Sad story really. Woman fell into addiction. Rainy day she gets picked up by [Appellant]. Takes her to the house. I guess maybe he spotted her as a drug addict. Maybe he knew she was. But she's there for several days and enjoy each other's company. I think she said she stayed there for two days in a row, and then she wanted to leave. Well, she was told she couldn't leave, and she tried to leave, and that was the first beating she suffered at the hands of [Appellant].

[Appellant] had a way of controlling people. No doubt he had the same sort of control over Melissa Piet and Leann, the other woman you've heard stayed there, and you heard stayed there, and Star, the other woman Patty, the other woman that you heard stayed there.

N.T., 10/26/15, at 776-777, 790-791.[8]

---

[8] Appellant also quotes other portions of the ADA's closing argument he finds objectionable. We reject these challenges because these portions of the ADA's closing argument related to permissible uses of Rule 404(b) evidence, *e.g.*, *res gestae* evidence and evidence tending to prove lack of mistake.

- 12 -

Appellant contends that this argument was improper in light of the limited purpose for which the evidence of Appellant beating Deloe was admitted. Again, the trial court admitted the evidence for the limited purpose of showing why Deloe did not immediately tell police what she saw and heard on the morning in question. The Commonwealth argues that the ADA was properly responding to defense counsel's closing argument. *See Miller*, 172 A.3d at 644 (citation omitted) ("the prosecutor may fairly respond to points made in the defense closing").

The ADA was not fairly responding to defense counsel's closing argument. Defense counsel argued in his closing argument that Deloe's testimony lacked credibility because Deloe testified that she was admitted to St. Margaret's Hospital **after** Appellant beat her and told her that he would kill her like he killed Victim. The evidence, however, showed that Deloe was admitted to St. Margaret's Hospital **prior** to Victim's death.

The ADA's closing argument was not responsive to this argument made by defense counsel. A responsive argument might have explained how Appellant beat Deloe so often that she forgot which beating preceded her admission to St. Margaret's Hospital. Although the ADA made this argument elsewhere in his closing argument, the portion of the argument quoted above was not germane to this explanation. Instead, the ADA noted Appellant's prior bad acts and then argued that on a specific occasion, the morning of Victim's murder, Appellant acted in accordance with his prior acts and beat Victim to

- 13 -

death.  This contravened the spirit of the trial court's cautionary instruction to the jury and constitutes the prototypical evidence that Rule 404(b) is meant to exclude.  Hence, we conclude that the ADA's closing argument fell outside the acceptable bounds of closing argument.

Having determined that the ADA made improper arguments to the jury, we turn to whether the trial court abused its discretion in denying Appellant's request for a mistrial.  After the ADA's improper closing argument, the trial court instructed the jury that:

> Now, you also heard evidence tending to prove that the defendant committed crimes for which he is not on trial.  I am speaking of the testimony to the effect that [Appellant] was a drug dealer and that he assaulted [] Deloe.  This evidence is before you for a limited purpose.  That is, with respect to the drug dealing activity, to show the full story that involves the facts of this case.  The limited purpose for the alleged assaults on [] Deloe is to show her fear of [Appellant].  This evidence may not be considered by you in any other way other than the purposes I just described.  You may not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might tend to infer guilt.

N.T., 10/23/15, at 811.

We conclude that the trial court did not abuse its discretion in finding that this limiting instruction was sufficient to cure any prejudice that resulted from the ADA's improper closing argument.  As noted above, we review a trial court's decision to grant a mistrial for an abuse of discretion.  *Miller*, 172 A.3d at 643 (citation omitted).  Moreover, the remedy of a mistrial based on an improper closing argument is extreme and is only necessary when a closing argument deprives a defendant of a fair trial.  *Cornelius*, 180 A.3d at 1261

- 14 -

(citation omitted). It is well-settled that jurors are presumed to follow the trial court's instructions. **Patterson**, 180 A.3d at 1228 (citation omitted). Based on this presumption, and the trial court's observations of the jury and the entire trial, it was reasonable for it to conclude that Appellant received a fair trial notwithstanding the ADA's improper closing argument. Although we may have reached a different conclusion if we presided over the trial, we are unable to say that the trial court abused its discretion in denying Appellant's motion for a mistrial based on the ADA's improper closing argument. Hence, Appellant is not entitled to relief on his second claim of error.

In his third issue, Appellant argues that the ADA improperly explained the concept of causation and that the trial court should have instructed the jury to ignore that portion of the ADA's closing argument or declared a mistrial. As we have detailed above, we review this claim for an abuse of discretion. During his closing argument, the ADA told the jury that, "The question for you, if you do believe that there were actions of a third person, is did [Appellant] set in motion a chain of events which may have involved the action of a third-party which ultimately led to [V]ictim's death in this case." N.T., 10/26/15, at 846.

We conclude that this argument was consistent with the jury instruction given by the trial court which Appellant did not object to. Specifically, the trial court instructed the jury that

> In order to be a direct cause of death, a person's conduct must be a direct and substantial factor in bringing about the death. There

- 15 -

can be more than one direct cause of death. A defendant who is a direct cause of death may be criminally liable, even though there are other direct causes.

A defendant is not a direct cause of death if the actions of a third person or the occurrences of another event plays an independent, important[,] and overriding role in bringing about the death compared to the role of the defendant that the defendant's conduct does not amount to a direct and substantial factor in bringing about the death.

A defendant's conduct may be a direct cause of death, even though his conduct was not the last or immediate cause of death. Thus, a defendant's conduct may be a direct cause of death if he initiates an unbroken chain of events leading to the death of the victim.

*Id.* at 849-850.

Although unartfully stated, the ADA conveyed to the jury that it could find Appellant caused Victim's death despite the fact that he was not the last person to assault her if his conduct initiated an unbroken chain of events leading to Victim's death. In essence, the ADA argued that, even if the jury believed Appellant's theory that he left the residence while Victim clung to life, they could still find that Appellant caused Victim's death.

Contrary to Appellant's assertion at trial and on appeal, the ADA did not attempt to confuse the jury with respect to the second paragraph of the instruction quoted above. The ADA did not argue that the jury could find Appellant caused Victim's death even if another individual had an independent, important, and overriding role in bringing about Victim's death. Hence, we conclude that Appellant is not entitled to relief on his third claim of error.

- 16 -

In his final issue, Appellant argues that the trial court's sentence was vindictive. This issue challenges the discretionary aspects of his sentence. *Commonwealth v. Robinson*, 931 A.2d 15, 20–22 (Pa. Super. 2007) (*en banc*). Pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court has explained, in order to reach the merits of a discretionary aspects claim,

> we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his [or her] issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the [S]entencing [C]ode.

*Commonwealth v. Machicote*, 172 A.3d 595, 602 (Pa. Super. 2017) (citation omitted). Appellant filed a timely notice of appeal, preserved the issue in his post-sentence motion, and included a Pennsylvania Rule of Appellate Procedure 2119(f) statement in his appellate brief. Thus, we turn to whether Appellant raises a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Battles*, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the

sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Grays***, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

In his Rule 2119(f) statement, Appellant argues that this case presents a substantial question because the trial court imposed a vindictive sentence without stating adequate reasons on the record. This raises a substantial question. ***Robinson***, 931 A.2d at 26. Accordingly, we proceed to analyze the merits of Appellant's discretionary aspects challenge.

A sentence is presumed vindictive, and thus contrary to the fundamental norms which underlie the sentencing process, when the trial court has previously imposed a lighter sentence on the defendant for the same crime(s) and does not affirmatively state on the record its reasons for resentencing him or her to a longer period of incarceration. ***Commonwealth v. Serrano***, 727 A.2d 1168, 1170 (Pa. Super. 1999). In this case, the trial court sentenced Appellant to a longer period of incarceration after his third trial than after his first trial, following which he was convicted of the same offenses. The trial court did not explain this increase at the sentencing hearing. Hence, we conclude that Appellant is entitled to relief on his discretionary sentencing challenge and remand to the trial court for the sole purpose of resentencing.

Judgment of sentence affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/2018