J-S19010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAHIM WELTON | : | |
| | : | |
| Appellant | : | No. 781 EDA 2019 |

Appeal from the PCRA Order Entered March 4, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005719-2009

BEFORE:  BOWES, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED JUNE 08, 2020**

Kahim Welton appeals from the dismissal of his Post-Conviction Relief Act ("PCRA") petition. After careful review, we affirm.

The trial court previously summarized the relevant factual history of this case as follows:

> The Commonwealth's evidence established that on July 4, 2006, in the courtyard of the Paschall Apartments in Southwest Philadelphia, [Appellant] approached the complainant, Maurice Hill, and a fistfight ensued.  The men briefly separated, and [Appellant] then shot Mr. Hill multiple times in the legs with Mr. Hill's gun.  Mr. Hill suffered five gunshot wounds to the back and the sides of his legs, including a left femoral artery transection and femoral vein injury.  Multiple surgical procedures were performed on both legs, including femoral artery bypass, femoral ligation, four compartment fasciotomies, and removal of a bullet from Mr. Hill's right knee.  Mr. Hill was discharged from the hospital approximately four weeks after the shooting.  Mr. Hill did not immediately identify [Appellant] as the shooter when questioned by police.

Tashea Young testified that she was living at the Paschall Apartments in 2006 and on the morning of July 4, 2006, she was standing on her balcony (that faced the courtyard) with Cindy Gambrell (Mr. Hill's girlfriend) and Jerome Armstrong (Ms. Young's boyfriend). She heard Mr. Hill (whom she referred to as "Gruff") say that he was going to call [Appellant] on the phone. She observed Mr. Hill standing in the middle of the courtyard, approximately fifteen feet from where she was standing on her balcony, when [Appellant] walked down from the top of the complex. Ms. Young observed Mr. Hill and [Appellant] talking: talking normally at first, then yelling. Ms. Young was not sure who threw the first punch but the fight lasted approximately five minutes. Ms. Young did not know why they stopped fighting, they just separated. "Rome" (Jerome Armstrong) then stepped off the balcony and handed [Appellant] the gun. [Appellant] shot Mr. Hill a few times and then walked back toward the top of the complex where he lived. He took the gun with him.

Detective David Tighe testified that he interviewed Mr. Hill on July 13, 2006. Detective Tighe stated that Mr. Hill was uncooperative and told him he did not see who shot him; he only heard a shot and then felt like he had been shot. Detective Tighe knew Mr. Hill was lying to him about not seeing who had shot him. On January 16, 2009, Detective Tighe received information from the District Attorney's Office that Mr. Hill was coming into the station to give him information regarding the shooting. Mr. Hill was cooperative and gave a statement identifying [Appellant] as the person who had shot him.

Trial Court Opinion, 4/15/13, at 3-4 (citations and repetition of values in numerical form omitted).

Appellant was charged with attempted murder, aggravated assault, persons not to possess firearms, possession of an instrument of crime ("PIC"), and carrying firearms on public streets. Appellant's first trial resulted in a mistrial after the jury was unable to reach a verdict. Appellant was retried, and the jury acquitted Appellant of attempted murder, but convicted him of

the remaining charges. On July 13, 2012, the trial court imposed an aggregate sentence of eleven to twenty-two years of imprisonment.

Appellant filed a timely direct appeal asserting that the trial court erred in admitting evidence of a prior bad act, in permitting the Commonwealth to use leading questions while examining Mr. Hill, and for failing to give a requested self-defense jury instruction. We rejected his arguments and affirmed Appellant's judgment of sentence. *See Commonwealth v. Welton*, 96 A.3d 1093 (Pa.Super. 2014) (unpublished memorandum). Appellant filed a petition for allowance of appeal to our Supreme Court, which was denied on August 28, 2014. *See Commonwealth v. Welton*, 99 A.3d 77 (Pa. 2014).

On July 26, 2015, Appellant filed a *pro se* PCRA petition. Appointed counsel filed an amended PCRA petition. In the amended PCRA petition, counsel alleged that trial counsel was ineffective for failing to cross examine witnesses in a manner that would have laid the necessary foundation to support issuance of a self-defense jury instruction. Specifically, PCRA counsel alleged that trial counsel was ineffective for failing to impeach Ms. Young with her prior trial testimony that only Mr. Hill possessed a gun. The Commonwealth responded with a motion to dismiss, and the trial court issued a notice of its intent to dismiss the PCRA petition without a hearing. After Appellant filed a *pro se* response, the PCRA court denied the petition. This appeal followed. After a remand, resulting in the appointment of new counsel,

both Appellant and the trial court have complied with the mandates of Pa.R.A.P. 1925.

Appellant raises the following issue for our review:

Did the trial court err, abuse its discretion, and/or make a mistake of law when it denied Appellant's [PCRA] petition for relief based on ineffective assistance of counsel, on March 4, 2019, without [a] evidentiary hearing, as meritless when [trial] counsel failed to request and/or preserve a self-defense jury instruction?

Appellant's brief at 2.

We begin with a discussion of the pertinent legal principles. Our "review is limited to the findings of the PCRA court and the evidence of record," and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa.Super. 2012). Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." *Id*. "[W]here the petitioner raises questions of law, our standard of review is de novo and our scope of review is plenary." *Id*.

Appellant alleges trial counsel ineffectiveness for failing to object to the trial court's refusal to give a self-defense instruction to the jury. In reviewing claims of ineffective assistance of counsel, counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. *See Commonwealth v. Becker*, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, a petitioner must plead and prove that: (1) the legal claim underlying his

ineffectiveness claim has arguable merit; (2) counsel's decision to act (or not) lacked a reasonable basis designed to effectuate the petitioner's interests; and (3) prejudice resulted. *Id*. The failure to establish any of the three prongs is fatal to the claim. *Id*. at 113.

When reviewing a challenge to the trial court's refusal to give a specific jury instruction:

> . . . . it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is considered inadequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

*Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa.Super. 2013), (quoting *Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa.Super. 2006)) (internal citations, quotation marks, and brackets omitted).

In order to successfully claim self-defense, a defendant must demonstrate three elements: (1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that the use of deadly force was necessary to prevent such harm; (2) the defendant did not provoke the incident which resulted in the use of force; and (3) the defendant did not violate any duty to retreat. *See Commonwealth v. Mouzon*, 53

- 5 -

A.3d 738, 740 (Pa. 2012) (citations omitted). Although the defendant has no burden to prove self-defense, before the defense is properly at issue, there must be some evidence to justify such a finding. *Id*. at 740. Once a defendant has done so, the burden of disproving self-defense beyond a reasonable doubt rests with the Commonwealth. *Id*. at 740-41. The Commonwealth may reach its burden by negating any one of the three elements. *Id*.

The record reflects that the trial court rejected trial counsel's proposed self-defense instruction on the grounds that Appellant had not raised a justification defense. *See* N.T. Jury Trial, 5/17/12, at 11-13. Specifically, the court concluded, that "without more on this record, I think it would be a stretch for me to charge on self-defense. So I won't give the charge." *Id*. at 12-13. This issue was waived on direct appeal after trial counsel failed to follow up his request for the instruction with a contemporaneous objection. Thus, this PCRA petition alleging trial counsel ineffectiveness followed.

In its opinion, the PCRA court further expanded on the trial court's holding, explaining that:

> In the instant case, Mr. Hill, the victim, testified that he and [Appellant] engaged in a physical fight, which ended with the two being separated, no longer standing next to each other. He also stated he believed [Appellant] was going home after the fight to retrieve a weapon, but instead, [Appellant] appeared five feet from him holding his (the victim's) handgun. Ms. Tashea Young witnessed the entire altercation. She testified at the first trial that once [Appellant] and Mr. Hill stopped throwing punches, the two stood a couple feet away from one another and [Appellant] had Mr. Hill's gun in his hand. It is evidence from testimony that [Appellant] did violate his duty to retreat. Both the victim and eyewitness, Ms. Young, observed Mr. Hill and [Appellant] become

separated from one another immediately after their physical fight. At that point of time, [Appellant] easily could have left the scene or at least attempted to do so, especially considering the fact that he had gained possession of the handgun. Instead of leaving the scene with the handgun in order to protect himself from any further attacks by Mr. Hill, [Appellant] stayed on the scene and shot the victim. Thus, the record shows that [Appellant] was not acting in self-defense when he shot Mr. Hill due to his failure to retreat.

Trial Court Opinion, 10/8/15, at 6.

We discern no abuse of discretion in the PCRA court's conclusion, as our own review of the record supports it. While Appellant may not have instigated the initial fight, he renewed and escalated the argument when he "yelled" that he was going to retrieve a gun, procured Mr. Hill's firearm from Jerome Armstrong, and proceeded to fire upon an unarmed Mr. Hill five times. N.T. Jury Trial, 5/15/12, at 82-90. *See, e.g. Commonwealth v. Patterson*, 180 A.3d 1217, 1231 (Pa.Super. 2018) (finding appellant did not act in self-defense when he shot the victim after an initial fist-fight between the parties had been broken up).

Further, Appellant's contentions that he was in imminent danger and, thus, could not retreat safely appear disingenuous and underdeveloped. *See* Appellant's brief at 5, 11-12. Specifically, Appellant alleges that he was in imminent danger and unable to retreat because he lived near Mr. Hill and Mr. Hill was known to carry weapons. However, Appellant has not offered any authority or cited to testimony in the record that would support his arguments that proximity in living arrangements or a reputation for carrying a gun can

raise to the level of imminent danger or remove the duty to retreat. In contrast, the record suggests that Appellant could have retreated, but chose instead to retrieve a firearm. Further, no imminent danger was present as Appellant utilized the victim's own firearm in order to initiate the one-sided shooting.

Accordingly, as Appellant has failed to show that he was entitled to a jury instruction on self-defense, the PCRA court did not err when it concluded that trial counsel was not ineffective on this basis. ***See Commonwealth v. Philistin***, 53 A.3d 1, 12–13 (Pa. 2012) (finding that counsel cannot be ineffective for not requesting a self-defense jury instruction where the defendant was not entitled to one).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/20