J-A07006-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAYMOND DOUGLAS NATTRESS | : | |
| | : | |
| Appellant | : | No. 705 MDA 2025 |

Appeal from the Judgment of Sentence Entered April 16, 2025
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0000593-2022

BEFORE: BOWES, J., DUBOW, J., and NEUMAN, J.

MEMORANDUM BY BOWES, J.:         **FILED: JUNE 18, 2026**

Raymond Douglas Nattress appeals from the judgment of sentence of twenty-three to forty-six years in prison followed by twenty-four years of probation imposed after a jury convicted him of several sexual assault offenses committed against his paramour's minor daughter. We affirm.

In 2020, the twelve-year old victim, S.W., lived with her mother and Appellant. S.W.'s biological father became concerned that summer when S.W. rapidly gained eighty pounds, superficially cut her wrists with a razor blade, quit soccer, and failed almost all her classes, despite previously being a well-rounded student. Following a suicide attempt, S.W.'s father enrolled her in counseling, and she disclosed to her counselor that Appellant had been sexually abusing her.

Forensic interviewer Megan Briggs met with S.W. on April 21, 2021. S.W. explained that during her first sexual encounter with Appellant, he had kissed and sucked on her breasts, digitally penetrated her vagina, which caused her significant pain and bleeding, shoved her to her knees to place his penis in her mouth, and ejaculated into her mouth. He forced the victim to use a vibrator on herself and place a finger and dildo into his anus. These actions were repeated in subsequent sexual assaults, including rape. Between August 2020 and February 2021, Appellant, who was more than forty years older than S.W., sexually abused her at least ten times. S.W. confessed that she was afraid to disclose this information to anyone due to her fear of Appellant, and that she would be considered "pathetic" and a "whore." N.T. Jury Trial Vol. II, 12/10/24, at 44.

The victim provided to the police descriptions of the sex toys Appellant would use on her and force her to use on him. Detective Donald Coffey of the Lower Allen Township Police Department obtained a search warrant for the mother's house to seize the sex toys. Upon execution, officers discovered lubricants, a vibrator, and an empty dildo box, the shape of which matched the report given by the victim. Forensics confirmed that Appellant's DNA was on the vibrator.

When Detective Corporal Michael Scarlato of the Lower Allen Township Police Department interviewed Appellant, he claimed that he knew what the interrogation was about and that S.W. fabricated the allegations against him.

He denied use of the sex toys initially, then asserted that he may have touched them to remove them from his bed.

Appellant was arrested and charged by information with a litany of sexual assault offenses. The matter proceeded to a jury trial, during which S.W. attested to Appellant's use of emotional manipulation against her and detailed several instances of sexual abuse perpetrated by him. Investigating officers, including Detective Coffey, forensic interviewer Ms. Briggs, and S.W.'s biological father also testified.

Prior to trial, the Commonwealth filed a motion *in limine* to offer Veronique Valliere, Ph.D., a clinical and forensic psychologist, as an expert in the behaviors of sexually abused children. The court deferred its ruling on the motion, and after reviewing Dr. Valliere's credentials at trial, the Commonwealth presented her as an expert in "counterintuitive behavior." N.T. Jury Trial Vol. V, 12/11/24, at 9. Appellant did not object and declined to conduct his own *voir dire* of her credentials. **Id**. The court accepted Dr. Valliere as an expert witness.

Dr. Valliere was given no information about this matter, but she explained to the jury the typical patterns and behaviors of victims who have experienced sexual abuse. She reported that children are frequently reluctant to disclose sexual abuse, which is not as counterintuitive as it may sometimes appear. She confirmed that signs of a child suffering from sexual abuse

include self-harm, suicidal threats, and poor grades in school. During cross-examination of Dr. Valliere, the following relevant exchange took place:

Q: And you're admitted as an expert in the field of counterintuitive behavior; is that right?

A: Yeah. It's more properly like phrased as victim dynamics or victims['] response to assault.

Q: Counterintuitive means things that otherwise don't make sense, right?

A: Right. That's why it's a misnomer. There really is no such thing as counterintuitive behavior.

N.T. Jury Trial Vol. V, 12/11/24, at 31.

Appellant declined to testify in his defense. At the conclusion of trial, the jury convicted him of three counts of rape of a child, two counts of involuntary deviate sexual intercourse ("IDSI"), and one count each of aggravated indecent assault, indecent assault, and corruption of minors. However, he was acquitted of two counts of IDSI. The court imposed the aforementioned sentence. Appellant filed a post-sentence motion challenging the sufficiency and weight of the evidence, and Dr. Valliere's admission as an expert witness. The court denied the motion.

Appellant timely appealed, and he and the trial court followed the requirements outlined in Pa.R.A.P. 1925.[1]  He raises the following questions for our determination:

> 1)      Did the trial court err and commit an abuse of discretion in admitting testimony from the Commonwealth's proffered expert in "counterintuitive behavior by victims of sexual assault," Dr. Veronique Valliere, where the claimed field of expertise lacks meaningful scientific or objective standards, thus failing to meet the threshold for admissibility provided by **Frye v. United States**, 293 F. 1013 (D.C. Cir. 1923) and Pa.R.E. 702, as evidenced by the witness's sworn admission that "there really is no such thing as counterintuitive behavior?"
>
> 2)      Did the trial court err and commit [an] abuse of discretion in denying a mistrial where the prosecutor falsely and prejudicially attributed a purported verbatim quotation to [Appellant] in closing argument via visual aid displayed to the jury, said quotation reading "the evil 13-year-old set me up to get what she wants" without any evidence [Appellant] said this but unambiguously communicating via use of quotation marks and first person pronoun that he did, where the trial court also did not give a curative instruction for the jury to disregard the false claim communicated by the Commonwealth's attorney?

Appellant's brief at 4 (cleaned up).

We begin with Appellant's claim that Dr. Valliere's testimony was improperly admitted pursuant to the **Frye** test, which has been incorporated

---

[1] The Commonwealth filed a post-sentence motion on April 16, 2025, requesting that the amount of restitution be adjusted, which the court granted the same day.  Thereafter, Appellant mistakenly filed his notice of appeal from the order denying his post-sentence motion.  **See Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa.Super. 2001) (*en banc*) ("In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions.").  We have corrected the docket to reflect that this appeal lies from the April 16, 2025 amended sentencing order.

into Pa.R.E. 702(c),[2] where she stated on cross-examination that "there is no such thing as counterintuitive behavior." Appellant's brief at 10-11. The trial court determined that Appellant's argument was waived because he "never lodged an objection to either Dr. Valliere or her testimony at trial." Trial Court Opinion, 8/22/25, at 10. Appellant contends that he preserved this challenge in his post-sentence motion, and the opportunity to challenge Dr. Valliere's testimony "did not arise until cross-examination." Appellant's brief at 16.

This Court has held that "the failure to make a timely and specific objection before the trial court at the appropriate stage of the proceeding will result in waiver of the issue." *Commonwealth v. Houck*, 102 A.3d 443, 451 (Pa.Super. 2014) (citation omitted). To preserve a challenge to the admission of evidence, a party must make "a timely objection, motion to strike, or

_____

[2] Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

motion *in limine*" and assert "the specific ground, unless it was apparent from the context." Pa.R.E. 103(a). The Rules of Appellate Procedure further provide that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Where a defendant seeks to challenge an expert's testimony pursuant to **Frye** and Rule 702(c), they must file a motion *in limine* or request a **Frye** hearing. **See Commonwealth v. Einhorn**, 911 A.2d 960, 975 (Pa.Super. 2006).

As mentioned, the Commonwealth filed a motion *in limine* to present Dr. Valliere as an expert at trial. The record reflects no objection from Appellant to the Commonwealth's motion. Instead, Appellant submitted four motions *in limine*, none of which mentioned Dr. Valliere. He also declined to conduct his own *voir dire* of Dr. Valliere at trial and neglected to object to her admission as an expert. Accordingly, Appellant has waived this claim.[3]

_____

[3] Even if Appellant preserved this challenge, we would conclude that the trial court did not abuse its discretion in accepting Dr. Valliere as an expert witness. In its Rule 1925(a) opinion, the trial court alternatively held that Appellant's argument was meritless where Dr. Valliere "never admitted that her field of study was nonexistent," rather she "expressed disagreement with using the words 'counterintuitive behavior' to describe the field because she believes the phrase is a misnomer." Trial Court Opinion, 8/22/25, at 10. Indeed, Dr. Valliere merely clarified on cross-examination that the title "counterintuitive behavior" could be misleading, as a better label would be "victim dynamics or victims['] response to assault." N.T. Jury Trial Vol. V, 12/11/24, at 31. As such, Appellant has failed to make a *prima facie* showing that Dr. Valliere's testimony was based on novel scientific evidence. **See Commonwealth v. Cramer**, 195 A.3d 594, 606 (Pa.Super. 2018) (stating that where a party opposes expert testimony pursuant to Rule 702, they "must demonstrate that the expert's testimony is based on novel scientific evidence, *i.e.*, that there is

*(Footnote Continued Next Page)*

Appellant next challenges the trial court's denial of a mistrial where the Commonwealth during closing arguments presented a visual aid to the jury that stated in quotation marks "the evil 13-year-old set me up to get what she wants." Appellant's brief at 17. It is well-settled that "[t]he trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion." *Commonwealth v. Simpson*, 754 A.2d 1264, 1272 (Pa. 2000) (citation omitted). A mistrial is appropriate "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Commonwealth v. Cash*, 137 A.3d 1262, 1273 (Pa. 2016) (cleaned up).

Here, the motion is based upon alleged prosecutorial misconduct. In this vein, we have explained that "prosecutorial misconduct will not be found where comments made were done so for oratorical flair." *Commonwealth v. Miller*, 897 A.2d 1281, 1291 (Pa.Super. 2006) (cleaned up). A prosecutor "may 'argue all reasonable inferences from the evidence in the record' and 'respond fairly to arguments made in the defense closing argument.'"

---

a legitimate dispute regarding the reliability of the expert's conclusions." (cleaned up)). Moreover, Dr. Valliere's expertise has been discussed and accepted in numerous cases. *See*, *e.g.*, *id*. at 607.

***Commonwealth v. Clancy***, 192 A.3d 44, 62 (Pa. 2018) (quoting ABA Standards §§ 3-6.8(a), (d)).

Appellant asserts that the Commonwealth's visual aid was misleading where he "did not testify at trial and there was no evidence that he uttered these claimed words to any person at any time, yet the prosecutor deceptively displayed this as a verbatim quotation, communicating to the jury that Appellant had said words which he had not."[4]  Appellant's brief at 17.  The error was not harmless, he maintains, because "quotation marks are used chiefly to indicate the beginning and the end of a quotation reflecting the exact phraseology of another," and "it cannot be said beyond a reasonable doubt that the jury understood the use of this punctuation here to mean anything other than a false quotation from Appellant nor that it did not contribute to their verdict."  ***Id***. at 23.

The trial court determined that Appellant ignored the fact that quotation marks can be used in contexts other than to cite exact phraseology.  ***See*** Trial Court Opinion, 8/22/25, at 11.  For example, as here, the quotation marks did not denote a phrase Appellant stated, but characterized the essence of

---

[4] Appellant preserved this issue by objecting to the Commonwealth's visual aid after closing arguments and specifying the grounds upon which he objected.  ***See*** N.T. Jury Trial Vol. VI, 12/12/24, at 7; ***Commonwealth v. Rose***, 960 A.2d 149, 154 (Pa.Super. 2008) (holding that appellant's counsel timely objected to a purported prejudicial statement made during the Commonwealth's closing argument where there was "no factual dispute over the content of the prosecutor's argument" and counsel objected immediately after closings with specificity).

Appellant's defense and his attorney's closing argument. *Id*. at 11-12. During closings, the court explained, Appellant's counsel "walked the jury through eleven examples of lies by the victim" and "proceeded to challenge the victim's credibility because she had been 'constantly changing the nature of the allegations against Appellant.'" *Id*. at 12 (cleaned up) (citing N.T. In re Closing Arguments, 12/12/24, at 7). The court opined that "the evil 13-year-old was a fair summation of what the defense was arguing all along." *Id*. at 13 (cleaned up). It also reminded the jury "of its role as factfinder and was instructed to regard counsel's arguments as argument, not as evidence." *Id*. at 14.

We discern no abuse of discretion. During closing arguments, Appellant's counsel reviewed several instances where the victim was purported to have lied. *See* N.T. In re Closing Arguments, 12/12/24, at 4-8. His cross-examination of S.W. further revealed his strategy of disparaging her credibility and highlighting her potential motivations to fabricate her allegations. *See* N.T In re S.W., 12/10/24, at 67 (questioning whether S.W. conspired to end the relationship between her mother and Appellant because she "d[idn]'t like [Appellant]"). The Commonwealth's visual aid was therefore a fair response to and a summation of Appellant's defense and closing argument. *See Clancy*, 192 A.3d at 62. The court further instructed the jury beforehand that closing arguments are not facts, and "the law presumes that

the jury will follow the instructions of the court." ***Commonwealth v. Patterson***, 180 A.3d 1217, 1228 (Pa.Super. 2018) (cleaned up).

Overall, Appellant has failed to demonstrate his entitlement to relief, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/18/2026